# 25-2311

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

LUIS SALAMAN,

*Plaintiff-Appellant*,

v.

DAVID CARNEY, (SA); (ATL); in his or her individual capacity, JOSEPH ALTIMARI, (SSA); in his or her individual capacity, ANISH SHUKLA, (SSA); in his or her individual capacity, BULLETS W. CAMPBELL, (SA); (STL); in his or her individual capacity, JONATHAN W. LAURIA, (SA); (ATL); in his or her individual capacity, JOSHUA LEWIS YOUNG, (SA); in his or her individual capacity, ADAM DOUGLAS JONES, (SA); in his or her individual capacity, TAE H. KIM, (SA); in his or her individual capacity, BRIAN HANKO, (SA); in his or her individual capacity,

*Defendants-Appellees*,

*(Caption Continued on Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF OF PLAINTIFF-APPELLANT

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW
FNT 1
#33821
Washington, DC 20033
(202) 455-4399

Victoria Stilwell
David M. Zionts
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

*Attorneys for Plaintiff-Appellant*

ANDREW PAPPAS, (SA); in his or her individual capacity, RUSSELL HEBER FRANDSEN, (SA); in his or her individual capacity, DANIEL MORRISON, (SA); in his or her individual capacity, BRENDAN MURPHY, (SA); in his or her individual capacity, STEVEN RICHARD RENDON, (SA); in his or her individual capacity, NIKOLAUS SWANCOTT, (SA); in his or her individual capacity, JAMES DOMACHOWSKI, (SA); in his or her individual capacity, AND ZACHARY BURKE, (SA); in his or her individual capacity,

*Defendants-Appellees*.

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

STATEMENT OF THE ISSUES ........ 4

STATEMENT OF THE CASE ........ 4

A. FBI Agents Use Excessive Force While Arresting Mr. Salaman. ........ 4

B. The District Court *Sua Sponte* Dismisses Mr. Salaman's Complaint. ........ 7

STANDARD OF REVIEW ........ 10

SUMMARY OF ARGUMENT ........ 11

ARGUMENT ........ 13

I. Mr. Salaman States a Valid Claim Under *Bivens* For Excessive Force in Violation of the Fourth Amendment. ........ 13

A. Mr. Salaman's Claim That FBI Agents Violated His Fourth Amendment Right to Be Free from Excessive Force Does Not Arise in a New *Bivens* Context. ........ 13

B. The District Court Improperly Collapsed the *Bivens* Two-Step Framework. ........ 23

C. The District Court's Flawed *Bivens* Analysis Fails on Its Own Terms Because an FTCA Action Is Not an Alternative For a *Bivens* Claim. ........ 30

D. Even If Mr. Salaman's Fourth Amendment Excessive Force Claim Presents a New *Bivens* Context, No Special Factors Counsel Against Extending a *Bivens* Remedy. ........ 40

CONCLUSION ........ 44

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007) ........................................................................10

*Agostini v. Felton*,
521 U.S. 203 (1997)........................................................................................40

*Arias v. Herzon*,
150 F.4th 27 (1st Cir. 2025)...................................................................*passim*

*Benitez v. Wolff*,
907 F.2d 1293 (2d Cir. 1990) ........................................................................10

*Bivens v. Six Unknown Federal Narcotics Agents*,
403 U.S. 388 (1971)...............................................................................*passim*

*Brownback v. King*,
592 U.S. 209 (2021)........................................................................................30

*Bueno Diaz v. Mercuri*,
442 F. Supp. 3d 701 (S.D.N.Y. 2020) ......................................................29, 37

*Bush v. Lucas*,
462 U.S. 367 (1983)........................................................................................42

*Byrd v. Lamb*,
990 F.3d 879 (5th Cir. 2021) ..........................................................................19

*Campbell v. City of Yonkers*,
No. 7:19-cv-2117, 2023 WL 4867459 (S.D.N.Y. July 31, 2023) ......................19

*Carattini v. Behun*,
No. 7:21-cv-9373, 2024 WL 3274663 (S.D.N.Y. July 2, 2024) ..................19, 37

*Carlson v. Green*,
446 U.S. 14 (1980).................................................................................*passim*

*Chappell v. Wallace*,
462 U.S. 296 (1983)........................................................................................44

*Chavis v. Chappius*,
618 F.3d 162 (2d Cir. 2010) ....................................................................11

*Cohen v. Trump*,
No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024) (summary order) ..........22, 23

*Collymore v. Krystal Myers, RN*,
74 F.4th 22 (2d Cir. 2023) ....................................................................5, 10, 11

*Correctional Services Corporation v. Malesko*,
534 U.S. 61 (2001)....................................................................................34, 36

*Davis v. Passman*,
442 U.S. 228 (1979).....................................................................................1, 14

*Edwards v. Gizzi*,
107 F.4th 81 (2d Cir. 2024) (per curiam) ........................................18, 22, 29, 35

*Egbert v. Boule*,
596 U.S. 482 (2022)...............................................................................*passim*

*Escobar v. Correa*,
No. 1:22-cv-8434, 2024 WL 4042122 (S.D.N.Y. Sep. 4, 2024)........................22

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994).........................................................................................43

*German-Andujar v. U.S. Customs & Border Protection*,
No. 6:24-cv-6190, 2025 WL 1101514 (W.D.N.Y. Apr. 14, 2025)....................22

*Goldey v. Fields*,
606 U.S. 942 (2025) (per curiam)...........................................................*passim*

*Hernandez v. Mesa*,
589 U.S. 93 (2020)...................................................................................*passim*

*Hicks v. Ferreyra*,
64 F.4th 156 (4th Cir. 2023) ....................................................................18, 20

*Hui v. Castaneda*,
559 U.S. 799 (2010)...................................................................................31, 33

*Jacobs v. Alam*,
915 F.3d 1028 (6th Cir. 2019) ........................................................................21

*Koprowski v. Baker*,
822 F.3d 248 (6th Cir. 2016) ..........................................................................36

*Left Fork Mining Company v. Hooker*,
775 F.3d 768 (6th Cir. 2014) ..........................................................................36

*Lehal v. Central Falls Detention Facility Corporation*,
No. 1:13-cv-3923, 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) .....................29

*Lewis v. Bartosh*,
No. 22-3060, 2023 WL 8613873 (2d Cir. Dec. 13, 2023)
(summary order)..................................................................................*passim*

*McEachin v. McGuinnis*,
357 F.3d 197 (2d Cir. 2004) ..........................................................................10

*McFadden v Noeth*,
827 F. App'x 20 (2d Cir. 2020) ......................................................................10

*Michel v. Orange County, N.Y.*,
No. 22-190, 2024 WL 461693 (2d Cir. Feb. 7, 2024)................................10, 11

*Mirvis v. Quay*,
No. 1:19-cv-2573, 2023 WL 5671935 (E.D.N.Y. Sep. 1, 2023)........................37

*Oliveras v. Basile*,
440 F. Supp. 3d 365 (S.D.N.Y. 2020) ............................................................37

*Powell v. United States*,
No. 1:19-cv-11351, 2020 WL 5126392 (S.D.N.Y. Aug. 31, 2020)...................37

*Quintero Perez v. United States*,
8 F.4th 1095 (9th Cir. 2021) .....................................................................21, 36

*Reid v. United States*,
825 F. App'x 442 (9th Cir. Sep. 2, 2020)........................................................36

*Salaman v. Carney*,
No. 3:25-cv-482, 2025 WL 2432674 (D. Conn. Aug. 22, 2025) .........................4

*Sargeant v. Barfield*,
87 F.4th 358 (7th Cir. 2023) ....................................................................35

*Schwartz v. Miller*,
153 F.4th 918 (9th Cir. 2025) ............................................................19, 28

*Schweiker v. Chilicky*,
487 U.S. 412 (1988).....................................................................................42

*Shaw v. U.S. Marshall*,
No. 1:24-cv-5644, 2024 WL 4574146 (E.D.N.Y. Oct. 24, 2024)......................22

*Sigalovskaya v. Braden*,
149 F.4th 226 (2d Cir. 2025) (per curiam) ....................................................18

*Snowden v. Henning*,
72 F.4th 237 (7th Cir. 2023) ..................................................................*passim*

*Terebesi v. Torreso*,
764 F.3d 217 (2d Cir. 2014) .........................................................................7

*Tolan v. Cotton*,
572 U.S. 650 (2014) (per curiam)................................................................17

*United States v. Stanley*,
483 U.S. 669 (1987).....................................................................................44

*Wilkie v. Robbins*,
551 U.S. 537, 553 (2007)...............................................................................34

*Ziglar v. Abassi*,
582 U.S. 120 (2017).................................................................................*passim*

**Constitutional Provisions**

U.S. Const. amend. IV ........................................................................*passim*

**Statutes**

28 U.S.C. § 1291 ...........................................................................................4

28 U.S.C. § 1331 ...........................................................................................3

28 U.S.C. §§ 1346, 2671–80...........................................................2, 9, 31, 33, 35

28 U.S.C. § 1915A ....................................................................................4, 8, 10

Federal Employees Liability Reform and Tort Compensation Act
("Westfall Act"), Pub. L. No. 100-694, 102 Stat. 4563 (1988)..........................33

Pub. L. No. 93-253, §2, 88 Stat. 50 (1974)...........................................................31

**Other Authorities**

S. Rep. No. 93-588 (1973) ..............................................................................31, 32

**Court Filings**

Brief for Petitioner, *Egbert v. Boule*, 596 U.S. 482 (2022)
(No. 21-147), 2021 WL 6118300 ......................................................................34

*United States v. Salaman*,
Case No. 3:22-cr-76 (D. Conn.).........................................................................6

# INTRODUCTION

In *Bivens v. Six Unknown Federal Narcotics Agents*, the U.S. Supreme Court first recognized that a plaintiff may sue for money damages to remedy a federal agent's violation of the Fourth Amendment to the U.S. Constitution. *See* 403 U.S. 388, 399 (1971); U.S. Const. amend. IV. The Court viewed the claim as necessary to "vindicat[e] . . . the personal interests protected by the Fourth Amendment," *id.* at 399 (Harlan, J., concurring in the judgment), and it twice expanded the availability of so-called implied causes of action over the course of a decade. *See Davis v. Passman*, 442 U.S. 228, 248–49 (1979); *Carlson v. Green*, 446 U.S. 14, 18–19 (1980). In the years that followed, the Court adopted a more circumspect approach to finding implied causes of action, and it declined to further extend the doctrine. But the Court never overruled *Bivens* and its progeny. Just the opposite: Despite appetite and opportunity, the Court reaffirmed "the continued force, or even the necessity, of *Bivens*," especially "in the search-and-seizure context in which it arose." *Ziglar v. Abassi*, 582 U.S. 120, 134 (2017).

Luis Salaman's Fourth Amendment claim arises precisely in that context. Mr. Salaman alleges that, during an early-morning raid, Special Agent Bullets W. Campbell ordered Special Agent David Carney to use his shotgun to fire six breaching shots at a kitchen door. The blasts struck and injured Mr. Salaman, who was standing on the other side of the door and reaching to open it. Mr. Salaman,

acting *pro se*, brought a complaint for damages to remedy the FBI agents' unconstitutional use of excessive force in violation of the Fourth Amendment.

To assess the viability of a claim like Mr. Salaman's, the Supreme Court follows a two-step inquiry under its modern *Bivens* jurisprudence. First, a court must determine whether the context of the claim is new; that is, whether the claim arises in a context meaningfully different from that of the Court's original trio of *Bivens* cases. Second, if so, a court must determine whether special factors counsel against recognizing a *Bivens* remedy. The Supreme Court urges caution before extending *Bivens* further, and use of this two-step framework—reaffirmed as recently as last term—helps lower courts heed that guidance.

Mr. Salaman's Fourth Amendment claim is identical in every meaningful respect to that of the plaintiff in *Bivens*. Nonetheless, the district court *sua sponte* dismissed Mr. Salaman's complaint at the pre-service screening stage. According to the district court, the viability of Mr. Salaman's claim hinged not on the well-established two-step framework, but on a single question: Whether the availability of an alternative remedy under the Federal Tort Claims Act ("FTCA") precluded Mr. Salaman's *Bivens* claim. The court determined that it did and dismissed the claim.

The decision below errs at every turn. There is nothing new about Mr. Salaman's Fourth Amendment excessive force claim, and so he belongs to that small group of litigants whose suits resist dismissal at step one. The availability of

alternative remedies is generally a step-two consideration, and the district court's invocation of the FTCA to bar Mr. Salaman's claim was especially inappropriate. Both Congress and the Supreme Court have been clear that the availability of an FTCA action does not preclude a *Bivens* suit because those claims are complements, not substitutes. Alternatively, and assuming that Mr. Salaman's Fourth Amendment claim did somehow present a new context and so required an extension of precedent, no special factors counsel against doing so at step two. His is, unfortunately, a garden-variety claim of excessive force resulting from a law enforcement encounter, and it involves none of the overlays that have previously given reason to pause.

Unless and until it is overruled, *Bivens* remains good law, and lower courts are obligated to analyze those claims consistent with binding precedent. Because the district court here failed to do so, this Court should reverse dismissal of Mr. Salaman's Fourth Amendment excessive force claim and remand his case for further proceedings.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Mr. Salaman's claim arises under the Fourth Amendment to the U.S. Constitution, as recognized by *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388. The district court entered final judgment dismissing Mr. Salaman's

claim on August 22, 2025. A97.[1] Mr. Salaman timely filed a Notice of Appeal on September 15, 2025. A98. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether a *Bivens* cause of action is available against line-level FBI agents who allegedly violated the Fourth Amendment when they entered a home and used excessive force during the plaintiff's arrest for drug-related offenses.

## STATEMENT OF THE CASE

Luis Salaman brought the underlying *Bivens* action alleging that FBI agents violated his Fourth Amendment right to be free from excessive force by firing a shotgun six times into a door that he was attempting to open in compliance with instructions. The district court, Judge Kari A. Dooley, dismissed Mr. Salaman's *pro se* complaint at the screening stage under 28 U.S.C. § 1915A. *See Salaman v. Carney*, No. 3:25-cv-482, 2025 WL 2432674 (D. Conn. Aug. 22, 2025). Mr. Salaman now appeals.

### A. FBI Agents Use Excessive Force While Arresting Mr. Salaman.

Because this case arises from a dismissal, this Court must accept as true the following allegations from Mr. Salaman's complaint and draw all reasonable

[1] Citations beginning "A" refer to the Appendix.

inferences in his favor. *See Collymore v. Krystal Myers, RN*, 74 F.4th 22, 30 (2d Cir. 2023).

On the morning of April 5, 2022, members of the New Haven FBI Safe Street Gang Task Force and FBI SWAT Team conducted a raid at a home in New Haven. A9–10 ¶ 23. Mr. Salaman and his girlfriend were in the home sleeping at the time. *Id*. They woke up to loud sounds—"banging" and "something blowing up"—coming from the kitchen. *Id.* Mr. Salaman heard someone shout "open the mother fucking door," but the person did not identify themselves. *Id.* Some time later, a person on a loud speaker outside the home identified themselves as the FBI and instructed Mr. Salaman to open the door or to come out with his hands up. *Id.*

Attempting to comply with the instruction, Mr. Salaman reached with his left hand to open the kitchen door. A10 ¶ 24. At the same time, and without warning, Special Agent David Carney began to shoot live rounds at the door with his shotgun after Special Agent Bullets W. Campbell gave an order to breach. *Id.* The first shot blew through the side of the kitchen door and frame and struck Mr. Salaman in his left hand. A10–11 ¶ 25. Mr. Salaman jumped back, holding his hand in pain. *Id.* Before he could move out of the way, Special Agent Carney fired again, this time striking Mr. Salaman in his knees. *Id.* Mr. Salaman fell to the floor and dragged himself to the living room. *Id.* Special Agent Carney fired a total of six breaching shots at the door. A10 ¶ 24.

Special Agent Carney entered the living room pointing his shotgun at Mr. Salaman. A12 ¶ 27. He told Mr. Salaman not to move and to put his hands behind his back so that he could be handcuffed. *Id.* Mr. Salaman told Special Agent Carney he could not do so because he had been shot and was injured. *Id.* Special Agent Carney led Mr. Salaman downstairs and out of the home. A12 ¶ 28. He placed Mr. Salaman in the car of two other agents, who took Mr. Salaman—still in pain from being shot—to the FBI Field Office in New Haven. A12–13 ¶ 28.[2] Below, the district court cited docket entries in Mr. Salaman's criminal case, which indicate that Mr. Salaman was arrested for and eventually convicted of drug-related offenses. A91 (citing Docket Entry Nos. 7, 11, 499, and 502 in *United States v. Salaman*, Case No. 3:22-cr-76 (D. Conn.)).

Beginning in October 2022, Mr. Salaman filed civilian complaints with the FBI New Haven Internal Affairs Unit, but he never received a response. A18 ¶¶ 38–40. Beginning in November 2022, Mr. Salaman filed civilian complaints with the Department of Justice ("Department"). A18–19 ¶¶ 41–42. In June 2023, Mr. Salaman received a letter from the Department's Office of the Inspector General

[2] At the FBI Field Office, medics eventually looked at Mr. Salaman's injuries and cleaned and bandaged his wounds. A13–14 ¶ 30. Medical personnel also attended Mr. Salaman after he arrived at the Donald W. Wyatt Detention Facility, however he was never taken to the hospital for his injuries despite assurances that he would be. A14–15 ¶ 32.

informing him that it had forwarded his correspondence to the Department's Inspection Division. A19 ¶ 43. In February 2024, Mr. Salaman received a letter from the Initial Processing Unit of the Internal Affairs Section of the Inspection Division ("Unit"). A19 ¶ 44. The letter stated that the Unit had reviewed Mr. Salaman's complaint and had not initiated an investigation, though it had mandated action be taken to address his concerns. *Id.* The Unit did not further comment on those actions due to unspecified confidentiality interests. *Id*. *See also* A67.

### B. The District Court *Sua Sponte* Dismisses Mr. Salaman's Complaint.

On March 24, 2025, Mr. Salaman filed a *pro se* complaint alleging that Special Agents Carney and Campbell had violated his Fourth Amendment right to be free from the use of excessive force. A4, A20–23 ¶¶ 45–47.[3] The claim was brought pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, with Mr. Salaman seeking compensatory and punitive damages. A20–23 ¶¶ 45–47, A34–35 ¶¶ 62–64.[4] Mr. Salaman also brought a number of other claims under *Bivens* not

[3] Although Mr. Salaman originally brought his Fourth Amendment excessive force claim against all seventeen defendants in the district court, he appeals dismissal of that claim only as to Special Agents Carney and Campbell. *See, e.g.*, *Ziglar*, 582 U.S. at 140 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."); *cf. Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) (concluding that a "direct participant" under 42 U.S.C. § 1983 "includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally").

[4] Mr. Salaman also sought declaratory and injunctive relief, which he does not maintain on appeal. A34 ¶¶ 60–61.

at issue here.[5] The district court screened Mr. Salaman's complaint under 28 U.S.C. § 1915A, which requires courts to review complaints in certain civil actions filed by prisoners or detainees and dismiss claims if they are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

On August 22, 2025, the district court *sua sponte* dismissed Mr. Salaman's complaint for failure to state a claim. A80, A90. After noting that Mr. Salaman brought each of his claims for damages pursuant to *Bivens*, the court explained that courts assess the availability of a *Bivens* remedy using a two-step analysis. A84–85. A court first "asks whether the case presents a new *Bivens* context," and, if it does, the court "consider[s] whether there are any special factors that counsel hesitation about granting the extension." *Id.* (quotation marks omitted) (citing and quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022), and *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020)). However, the district court stated, "the two-part test 'often resolve[s] to a single question' of 'whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" A85 (quoting *Egbert*, 596 U.S. at 492).

[5] The district court construed Mr. Salaman's complaint to allege an additional claim under the Fourth Amendment for "unreasonable search and seizure." A86. Mr. Salaman also brought a substantive due process claim under the Fourteenth Amendment; an equal protection claim under the Fourteenth Amendment; claims under the Eighth Amendment for cruel and unusual punishment and deliberate indifference to serious medical needs; and a claim for recklessness. A23–33 ¶¶ 48–58. Mr. Salaman does not appeal the district court's dismissal of these claims.

The district court then applied a single-step inquiry. The court determined that the Second Circuit had not resolved whether a Fourth Amendment excessive force claim constitutes a new *Bivens* context. A86–87. The court suggested that Mr. Salaman's claim, at least, did not arise in a new context because it did not involve "a new category of defendants," unlike recent unpublished Second Circuit summary orders affirming dismissals of Fourth Amendment excessive force claims. A87–88. "Nevertheless," the court reasoned, "a *Bivens* remedy may still be 'unavailable' if there is an 'alternative remedial structure.'" A88 (quoting *Lewis v. Bartosh*, No. 22-3060, 2023 WL 8613873, at *1 (2d Cir. Dec. 13, 2023) (summary order)). The court concluded that because Mr. Salaman "could bring a claim under the Federal Tort Claims Act . . . related to the FBI agents' alleged use of excessive force," his *Bivens* action was "foreclose[d]." A89.

In a footnote, the district court stated that "[n]either the Supreme Court nor the Second Circuit has explicitly decided whether," under the Supreme Court's recent *Bivens* jurisprudence, "the availability of an FTCA action precludes the *Bivens* remedy." A89 n.2 (quotation marks omitted). But the district court held that additional guidance was unnecessary "because *any* alternative, existing process . . . may" provide a reason for courts to "refrain from providing a new and

freestanding remedy in damages." *Id.* (quotation marks omitted). The court then dismissed Mr. Salaman's Fourth Amendment excessive force claim. A90.[6]

Mr. Salaman timely appealed. A98.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's *sua sponte* dismissal of a complaint screened under 28 U.S.C. § 1915A. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device," *Collymore*, 74 F.4th at 28 (quoting parenthetically *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990)), and the Second Circuit generally is "reluctan[t] to dismiss *pro se* complaints at such an early stage of the proceedings," *id.* (citation modified). *See also McFadden v Noeth*, 827 F. App'x 20, 26 (2d Cir. 2020) ("[W]here a *colorable claim* is made out, dismissal is improper prior to service of process and the defendants' answer." (quotation marks omitted)).

On appeal as in the district court, Mr. Salaman's *pro se* complaint must be construed "liberally and interpret[ed] . . . to raise the strongest arguments that it

[6] The district court did not grant Mr. Salaman leave to amend his complaint, even though this Court has "frequently reiterated that *sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without . . . granting leave to amend is disfavored." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (brackets omitted); *Michel v. Orange Cnty., N.Y.*, No. 22-190, 2024 WL 461693, at *1 (2d Cir. Feb. 7, 2024) (same). *Pro se* prisoners "must" be granted leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim," *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quotation marks omitted), but the decision below contains no futility determination.

suggests." *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation modified). This Court "must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Michel v. Orange Cnty., N.Y.*, No. 22-190, 2024 WL 461693, at *1 (2d Cir. Feb. 7, 2024) (quotation marks omitted). That "lenient test" is satisfied here. *See Collymore*, 74 F.4th at 28.

## SUMMARY OF ARGUMENT

I.A. The Supreme Court requires use of a two-step framework to assess the viability of *Bivens* claims. A court first must ask whether a plaintiff's *Bivens* claim presents a new context. If it does, a court then must ask whether any special factors counsel against extending the *Bivens* remedy. Under this framework, Mr. Salaman's Fourth Amendment excessive force claim against line-level FBI agents survives dismissal at the first step, because his claim is virtually identical to the claim in *Bivens* itself. The weight of precedent from the Supreme Court and other circuits is in accord.

B. The district court did not adhere to this framework. Instead, the court merged the two steps and determined that even if Mr. Salaman's claim did not involve a new category of defendants, his claim still would fail if an alternative remedial structure precluded a *Bivens* remedy. The district court held that the FTCA was such an alternative and therefore dismissed Mr. Salaman's claim. But

alternative remedial structures generally are considered at step two of the *Bivens* framework and cannot serve to preclude a heartland *Bivens* claim like Mr. Salaman's.

C. The district court's flawed analysis also conflicts with binding Supreme Court precedent and so fails on its own terms. Congress views the FTCA as a complement, not an alternative, to *Bivens*; accordingly, in *Carlson v. Green* the Supreme Court explicitly held that the FTCA does not preclude a *Bivens* remedy. The Supreme Court has since repeatedly confirmed that finding of congressional intent, and circuits across the country have applied *Carlson*'s reasoning, as they must. The FTCA therefore does not preclude Mr. Salaman's claim, no matter where in the *Bivens* framework this Court considers the statute.

D. This Court should hold that Mr. Salaman's Fourth Amendment excessive force claim does not arise in a new context and end its analysis there, but even if it proceeds with the second step of the *Bivens* framework, no special factors counsel against extending a damages remedy. No alternative remedies, FTCA or other, preclude Mr. Salaman's claim, and his case does not involve any of the circumstances that have supplied reason to hesitate in the past.

## ARGUMENT

### I. Mr. Salaman States a Valid Claim Under *Bivens* For Excessive Force in Violation of the Fourth Amendment.

*Bivens* is "settled law" in its own context, *see Ziglar*, 582 U.S. at 134, and Mr. Salaman's Fourth Amendment claim, which seeks damages for FBI agents' use of excessive force during an arrest at a home, arises just there. The district court erred when it failed to recognize that this claim required no *Bivens* extension. The court compounded that error by considering whether the availability of an FTCA action independently forecloses Mr. Salaman's *Bivens* claim—it does not. Both Congress and the Supreme Court have made clear that the FTCA and *Bivens* are complements, not substitutes, and so the former does not preclude the latter. Alternatively, even if Mr. Salaman's claim did present a new *Bivens* context, no special factors weigh against extending a damages remedy here. This Court should reverse.

#### A. Mr. Salaman's Claim That FBI Agents Violated His Fourth Amendment Right to Be Free from Excessive Force Does Not Arise in a New *Bivens* Context.

Mr. Salaman's Fourth Amendment excessive force claim looks just like that in *Bivens*. It involves the same constitutional right, violated in the same way and in the same setting, by the same category of defendants carrying out the same law enforcement mandate. These considerations all show that, under step one of the Supreme Court's well-established *Bivens* framework, Mr. Salaman's claim is not

new and therefore survives dismissal—no further analysis needed. The district court was wrong to conclude otherwise.

### 1. Courts must analyze the viability of *Bivens* claims using a two-step framework.

In *Bivens*, the Supreme Court held that a "violation of [the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages" directly under the Constitution. 403 U.S. at 389. Over the next decade, the Court recognized two additional implied causes of action against federal officials for damages. In *Davis v. Passman*, the Court recognized a claim for sex discrimination in violation of the Fifth Amendment. 442 U.S. at 248–49. And in *Carlson v. Green*, the Court recognized a claim for failure to provide medical treatment in prison in violation of the Eighth Amendment. 446 U.S. at 18–19. Since those three cases, the Supreme Court has declined to extend *Bivens* to cover other constitutional violations. *See Ziglar*, 582 U.S. at 131. But plaintiffs may continue to bring *Bivens* claims, *see id.* at 134, and courts must continue to assess their viability.

To do so, the Supreme Court "has applied a two-step test." *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (per curiam). "First, the Court asks whether the case presents 'a new *Bivens* context'—that is, whether the case 'is different in a meaningful way' from the cases in which [the] Court has recognized a *Bivens* remedy." *Id.* (quoting *Ziglar*, 582 U.S. at 139). To aid lower courts, the Supreme

Court has compiled a non-exhaustive "list of differences that are meaningful enough to make a given context a new one." *See Ziglar*, 582 U.S. at 139–40.[7] "Some differences," however, are "so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 149.

"Second," if a case does present a new context, the Court "then ask[s] whether there are 'special factors' indicating that 'the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Goldey*, 606 U.S. at 944 (per curiam) (quoting *Egbert*, 596 U.S. at 492). *See also Hernandez*, 589 U.S. at 102 ("When we find that a claim arises in a new context, we proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension." (citation modified)). This special-factors analysis is "anchored in separation-of-powers principles." *Goldey*, 606 U.S. at 944 (per curiam) (quotation marks omitted).

For nearly a decade, the Supreme Court has articulated and applied this same two-step test for determining whether a *Bivens* cause of action may proceed. *See Ziglar*, 582 U.S. at 139–40 (requiring a "special-factors analysis" after determining

[7] Those differences include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 139–40.

that the case presented "a new *Bivens* context"); *Hernandez*, 589 U.S. at 102 ("When asked to extend *Bivens*, we engage in a two-step inquiry."); *Egbert*, 596 U.S. at 492 ("[O]ur cases have framed the inquiry as proceeding in two steps."); *Goldey*, 606 U.S. at 944 (per curiam) (concluding that the "case [arose] in a new context, and 'special factors' counsel[ed] against recognizing an implied *Bivens* cause of action"). In *Egbert v. Boule*, decided in 2022, the Court highlighted the separation-of-powers concerns that animate the framework by observing that its two steps often reduce to the "single question" of "whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. *See also Hernandez*, 589 U.S. at 96 ("[T]he Constitution's separation of powers requires us to exercise caution before extending *Bivens* to a new context . . . ." (quotation marks omitted)). But the Court did not alter the *Bivens* two-step framework in *Egbert* or in other cases since. Rather, just last term, the Court reaffirmed and applied its "two-step test." *Goldey*, 606 U.S. at 944 (per curiam).

### 2. Mr. Salaman's claim that FBI agents used excessive force in violation of the Fourth Amendment arises in the context of *Bivens*.

Proper analysis of Mr. Salaman's Fourth Amendment excessive force claim begins and ends at the first step of the *Bivens* inquiry. His suit for damages after FBI agents used excessive force while carrying out a raid inside a home is not "meaningfully different" from *Bivens* itself. *See Egbert*, 596 U.S. at 492 (citation

modified). Because Mr. Salaman's claim does not arise in a new context, it should have survived dismissal.

*Bivens* involved an arrest and search carried out by agents with the now-defunct Federal Bureau of Narcotics. 403 U.S. at 389. The plaintiff, Webster Bivens, alleged that those agents, acting under the color of federal law, "entered his apartment and arrested him for alleged narcotics violations." *Id.* The agents "manacled" him in front of his wife and children, threatened to arrest the entire family, and searched his apartment "from stem to stern." *Id.* He sued for damages in federal district court, alleging that "the arrest and search were effected without a warrant, . . . that unreasonable force was employed in making the arrest," and "that the arrest was made without probable cause," resulting in "great humiliation, embarrassment, and mental suffering." *Id.* at 389–90. The Supreme Court held that his "complaint state[d] a cause of action under the Fourth Amendment" and that he was "entitled to recover money damages for any injuries . . . suffered as a result of the agents' violation of the Amendment." *Id.* at 397.

Mr. Salaman's excessive force claim is similar in virtually every respect to Webster Bivens' excessive force claim. Mr. Salaman's claim involves the same constitutional right: the Fourth Amendment provision against unreasonable seizures. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) ("When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is

the Fourth Amendment right against unreasonable seizures."). The "mechanism of injury," too, is similar. *Cf. Ziglar*, 582 U.S. at 139. In *Bivens*, the plaintiff "asserted that . . . unreasonable force was employed in making [his] arrest" for alleged narcotics violations. 403 U.S. at 389. Similarly, in connection with his arrest for drug-related offenses, Mr. Salaman has alleged that Special Agents Carney and Campbell, who were "conducting a raid" at a home, used "unreasonable force" by "shooting live rounds with [a] shotgun through the . . . kitchen door." A9 ¶ 23, A20 ¶ 46(a).

Mr. Salaman's claim involves the same "category of defendants," as the district court acknowledged. *See* A88. Similar to the plaintiff in *Bivens*, Mr. Salaman seeks a damages remedy against FBI agents. *See* A20–22 ¶ 46; *see also Ziglar*, 582 U.S. at 140 (describing *Bivens* as involving "a claim against FBI agents").[8] There are no discernible differences in the rank of the officers involved. As in *Bivens*, Mr. Salaman seeks to hold accountable line-level officers carrying out a law enforcement mandate, not high-ranking officials. *See, e.g.*, *Hicks v. Ferreyra*, 64 F.4th 156, 167–69 (4th Cir. 2023) (no new context under similar conditions);

[8] It is irrelevant that *Bivens* involved agents of the Federal Bureau of Narcotics. *See* 403 U.S. at 389. "[T]he dismissal of a Fourth Amendment *Bivens* claim based solely on the difference in federal agency would, if taken to its logical conclusion, preclude a damages remedy for any *Bivens* search-and-seizure claim since the Federal Bureau of Narcotics—the agency at issue in *Bivens*—no longer exists." *Sigalovskaya v. Braden*, 149 F.4th 226, 232 (2d Cir. 2025) (per curiam) (Lee, J., concurring). *See also Edwards v. Gizzi*, 107 F.4th 81, 88 (2d Cir. 2024) (per curiam) (Robinson, J., concurring in the judgment) (same).

*Snowden v. Henning*, 72 F.4th 237, 246 (7th Cir. 2023) (same). The location in which the alleged violations occurred—a home—also is the same. *See, e.g.*, *Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025) (no new context because plaintiff's claim involved, among other things, "the same . . . setting"). The line-level FBI agents also were enforcing the same laws as the federal agents in *Bivens*. *See Snowden*, 72 F.4th at 246 (no new context where Drug Enforcement Administration agent was "operat[ing] under the same legal mandate as the officers in *Bivens*—the enforcement of federal drug laws"); *cf. Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (new context in part because the incident did not arise from a narcotics investigation).

The district court acknowledged some of these similarities but noted an intra-Circuit "split" as to whether excessive force claims present a new context under *Bivens*. *See* A86 (quoting *Carattini v. Behun*, No. 7:21-cv-9373, 2024 WL 3274663, at *3 (S.D.N.Y. July 2, 2024) (collecting cases)). It is true that some district courts have assumed that *Bivens* involved only the Fourth Amendment right to privacy, not the right to be free from excessive force, and therefore that claims invoking the latter present a new context. *See, e.g.*, *Campbell v. City of Yonkers*, No. 7:19-cv-2117, 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023). But those decisions misread *Bivens*.

The plaintiff in *Bivens* alleged not only that his "arrest and search were effected without a warrant," but also that "unreasonable force was employed in making [his] arrest." 403 U.S. at 389. Moreover, the Supreme Court held that the plaintiff was "entitled to recover money damages for *any* injuries . . . suffered as a result of the agents' violation of the Fourth Amendment." *Id.* at 397 (emphasis added). *See also Hicks*, 64 F.4th at 165, 167 n.2 ("*Bivens* involved . . . the excessive use of force . . . ."). In other words, because excessive force was part of the claim in *Bivens*, Fourth Amendment excessive force actions do not, per se, arise in a new context. Other aspects of a claim must distinguish it "in a meaningful way." *See Ziglar*, 582 U.S. at 139.

Consistent with this reasoning, Courts of Appeals have held that a Fourth Amendment excessive force claim does not without more present a new context. For example, in *Snowden v. Henning*, the Seventh Circuit allowed a plaintiff to pursue a Fourth Amendment excessive force claim alleging that a Drug Enforcement Administration agent punched him several times in the face during an arrest, resulting in two black eyes and an orbital fracture. 72 F.4th at 239. Noting that the "claim in *Bivens* specifically included an allegation that unreasonable force was employed in making the arrest," *id.* at 239 (quotation marks omitted), the Seventh Circuit held that it could "identify no meaningful difference between [the plaintiff's]

case and *Bivens* to suggest that he should not be able to pursue []his excessive-force claim," *id.* at 245.

The Sixth Circuit also has allowed a Fourth Amendment excessive force claim to proceed. In *Jacobs v. Alam*, law enforcement officers searching a home for a fugitive shot one of its occupants, who later alleged an excessive force claim against the officers. 915 F.3d 1028, 1033 (6th Cir. 2019). That court held that, even in the wake of the Supreme Court's more recent *Bivens* decisions, the plaintiff's claim was a "run-of-the-mill challenge[] to standard law enforcement operations that f[e]ll well within *Bivens* itself." *Id.* at 1038 (quotation marks omitted).

And in *Arias v. Herzon*, the First Circuit reversed a grant of summary judgment to defendants on Fourth Amendment excessive force claims. 150 F.4th 27, 36, 49–50 (1st Cir. 2025). In that case, the plaintiff had alleged that Drug Enforcement Administration agents had used excessive force when arresting him in a shopping-center parking lot. *Id*. at 31. The First Circuit held that the plaintiff's "excessive force claims ar[o]se in the same context as *Bivens*," and so a remedy was available "just as it was" in that case. *Id.* at 30.[9]

[9] The Ninth Circuit has also observed that *Bivens* "approve[d] a . . . remedy for an excessive force claim." *See Quintero Perez v. United States*, 8 F.4th 1095, 1104–05 (9th Cir. 2021) (ultimately holding that other differences rendered new a *Bivens* claim involving a fatal shooting at the U.S.-Mexico border that had occurred pursuant to an executive policy authorizing deadly force in response to rock throwing).

This Court should join those Circuits and squarely hold that a Fourth Amendment excessive force claim does not, on its own, constitute a new *Bivens* context.[10] The district court's suggestion that this Court has already decided otherwise, *see* A87, is incorrect. The district court stated that its decision was "guided by" two nonprecedential summary orders that had affirmed "findings that the plaintiffs' Fourth Amendment *Bivens* claims presented a new context." *Id.* (quotation marks omitted) (citing *Cohen v. Trump*, No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024) (summary order), and *Lewis*, 2023 WL 8613873, at *2 (summary order)). But, in addition to being nonbinding, the summary orders in *Cohen* and *Lewis* are inapposite here because other aspects of those cases, apart from the Fourth Amendment violations, differentiated them from *Bivens*.[11]

In *Cohen*, the plaintiff alleged an unreasonable seizure claim after his furlough and home confinement were revoked and he was remanded to custody of the Bureau of Prisons, then placed in solitary confinement. 2024 WL 20558, at *1–2. The panel

[10] *See also Edwards*, 107 F.4th at 88 (per curiam) (Robinson, J. concurring in the judgment) (agreeing with dismissal of an Eighth Amendment excessive force claim but rejecting "the suggestion that *any* excessive force claim against a rank-and-file Deputy U.S. Marshal is meaningfully different from *Bivens*").

[11] The same is true for the three district-court cases that the decision below cited in its reasoning. A88. *See Escobar v. Correa*, No. 1:22-cv-8434, 2024 WL 4042122, at *4 (S.D.N.Y. Sep. 4, 2024) (new context when claim involved a different category of defendants acting pursuant to a different legal authority); *Shaw v. U.S. Marshall*, No. 1:24-cv-5644, 2024 WL 4574146, at *2 (E.D.N.Y. Oct. 24, 2024) (claim involving different category of defendants could not proceed); *German-Andujar v. U.S. Customs & Border Prot.*, No. 6:24-cv-6190, 2025 WL 1101514, at *3 (W.D.N.Y. Apr. 14, 2025) (new context when claim involved a different setting and a different category of defendants).

in *Cohen* determined that the plaintiff's claim arose in a new context due to "new categories of defendants that were not contemplated in *Bivens*," including a former President and a former Attorney General of the United States. *Id.* at *2 (citation modified). The setting (detention) and the mechanism of injury (remand to prison) also distinguish that case from *Bivens.* As for *Lewis*, it involved an excessive force claim against U.S. Marshals. 2023 WL 8613873, at *1. That panel held that the different "professional identity" of the defendants gave rise to a new context. *Id.* at *1–2. Mr. Salaman's case does not involve any of these distinctions.

To summarize, Mr. Salaman's Fourth Amendment excessive force claim is not meaningfully different from *Bivens*. It falls within the "heartland" of the doctrine. *See Snowden*, 72 F.4th at 244. The district court therefore should have ended its inquiry at step one of the "two-step test," *Goldey*, 606 U.S. at 944 (per curiam), and its failure to do so should be reversed by this Court.

### B. The District Court Improperly Collapsed the *Bivens* Two-Step Framework.

Compounding its failure to recognize that Mr. Salaman's claim did not arise in a new context, the district court further erred by creating a new test that improperly merges the first and second steps of the *Bivens* framework. The district court's analysis reflects a misapplication of Supreme Court precedent that, left uncorrected, will result in like plaintiffs being treated differently within the Second Circuit.

The district court began by correctly identifying the framework's step-one question as whether Mr. Salaman's claim differed "in a meaningful way from the three *Bivens* claims the Supreme Court has recognized." A87 (quotation marks omitted). The district court should have then answered that question, such as by evaluating Mr. Salaman's claim against the Supreme Court's example "list of differences that are meaningful enough to make a given context a new one," *see Ziglar*, 582 U.S. at 139–40, and progressed to step two only if the context was, indeed, new. But the district court did not conduct that analysis. Instead, it asserted that "even if a claim does not involve a new category of defendants, a *Bivens* remedy may still be unavailable if there is an alternative remedial structure." A88 (quotation marks omitted). In support of its new single-step, either/or test, the district court cited this Court's summary order in *Lewis*—a case that *did*, in the panel's view, involve a new category of defendant. *See* A88–89 (citing *Lewis*, 2023 WL 8613873, at *1). The district court had also repeated *Egbert*'s observation that the *Bivens* framework's two-step test "often resolve[s] to a single question of whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See* A85 (quotation marks omitted).

*Egbert*'s "single question" shorthand does not give the district court license to ignore the established two-step framework. To be sure, *Bivens* has no shortage of detractors, and this commentary in *Egbert* underscores the Court's reluctance to

extend the doctrine. However, both before and after *Egbert* (and in *Egbert* itself), the Supreme Court has stressed that *Bivens* remains good law, and that the framework for analyzing those claims has two steps, not one. *See also Arias*, 150 F.4th at 45 ("[W]e do not understand *Egbert* . . . to have relieved courts of their duty to engage in the general new-context inquiry.").

The Supreme Court first articulated and applied its current two-step test in *Ziglar v. Abbasi* in 2017. *See* 582 U.S. at 139–40. There, the Court explained that the "proper test for determining whether a case presents a new *Bivens* context" is whether a case is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Id.* at 139. Because the suit in *Ziglar* did present a "new *Bivens* context . . . . a special-factors analysis was required before allowing [it] to proceed." *Id.* at 140. Three years later, the Court was even more explicit in *Hernandez v. Mesa*. *See* 589 U.S. 93. The Court held that it "first inquire[s] whether the request involves a claim that arises in a new context or involves a new category of defendants.'" *Id.* at 102 (quotation marks omitted). Then, after "find[ing] that a claim arises in a new context, [it] proceed[s] to the second step and ask[s] whether there are any special factors that counsel hesitation about granting the extension." *Id.* (citation modified).

*Egbert* itself, decided two years after *Hernandez*, reaffirmed both the existence and application of the two-step framework. *Egbert*, 596 U.S. at 492. The

Court was clear: "To inform a court's analysis of a proposed *Bivens* claim, our cases have framed the inquiry as proceeding in two steps." *Id.* "First," the Court explained, "we ask whether the case presents a new *Bivens* context." *Id.* (quotation marks omitted). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed," or "[i]f there is even a single reason to pause before applying *Bivens* in a new context." *Id.* (quotation marks omitted).

*Egbert* remarked that these two steps "often resolve to a single question," *id.*, but the Court did not actually consolidate the inquiry, nor was there any basis to: *Egbert* concerned only the second step of the *Bivens* framework. Below, the Court of Appeals had "conceded that [the plaintiff's] Fourth Amendment claim presented a new context for *Bivens* purposes," *id.* at 494, and had "correctly held that [his] First Amendment claim present[ed] a new *Bivens* context," *id.* at 498. Accordingly, the only question before the Supreme Court was whether any special factors counseled against allowing damages for those claims—i.e., "whether to *extend* *Bivens*." *Id.* at 498–99 (emphasis added). Even the "single question" language that the district court relied on expressly contemplates an extension of precedent, considered at step two. *See id.* at 492 (asking "whether there is any reason to think

that Congress might be better equipped to *create* a damages remedy" (emphasis added)); *see also Arias*, 150 F.4th at 40–41, 45 (noting the same).

*Egbert* also did not hold that a court should dismiss a heartland *Bivens* claim if "an alternative remedial structure" exists, as the district court and the summary order in *Lewis* propose. *See Lewis*, 2023 WL 8613873, at *1. *Egbert* did state that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." 596 U.S. at 493 (quotation marks omitted). But the Supreme Court has suggested that alternative remedies generally are considered in the framework's second step concerning special factors that counsel hesitation—after a claim is found to arise in a new context at step one. *See id.* at 492 ("If there are alternative remedial structures in place, that alone, *like any special factor*, is reason enough to limit the power of the Judiciary to infer a *new Bivens* cause of action." (citation modified)). *See also Snowden*, 72 F.4th at 246 n.4 (recognizing that because that "case [did] not present a new *Bivens* context," a proposed alternative remedy—there, the FTCA—did not actually "come into play").

A court may take into account at step one "potential special factors that previous *Bivens* cases did not consider," *Ziglar*, 582 U.S. at 140, including "the existence of alternative remedies," *id.* at 148. But that circumstance would not justify the district court's decision below. The only special factor the district court

considered was the availability of an FTCA remedy. And the Supreme Court has not just considered that special factor—it has explicitly held that a possible FTCA claim does not preclude *Bivens* relief. *See infra* pp. 30–34. The FTCA therefore cannot render new the context of Mr. Salaman's claim.[12]

To the extent *Egbert*'s "single question" language did muddy the waters, the Supreme Court clarified the law just last term in *Goldey v. Fields*. 606 U.S. 942 (per curiam). Speaking with one voice, the Court articulated and applied its "two-step test" to "determine whether a *Bivens* claim may proceed." *Id*. at 944. It reversed the Fourth Circuit's extension of a *Bivens* remedy to an Eighth Amendment excessive force violation because the "case [arose] in a new context, and special factors counsel[ed] against recognizing an implied *Bivens* cause of action." *Id.* (quotation marks omitted). *Goldey*, which post-dates the summary order in *Lewis*, therefore removed any doubt over whether the two-step framework survived *Egbert*. *See also Arias*, 150 F.4th at 46 ("[T]he two-step framework is, after *Goldey*, even

[12] Moreover, the overarching question at step one remains whether the case is "different in a meaningful way" from previous *Bivens* cases, *see Goldey*, 606 U.S. at 944 (per curiam) (quotation marks omitted), such as "when it involves a factual distinction or new legal issue that might alter the policy balance that initially justified the implied damages remedies in the *Bivens* trilogy," *Snowden*, 72 F.4th at 239. Because of this, "alternative remedies are not typically relevant at step one where they do not distinguish the context of the violation, but merely speak to the appropriateness of a judicial remedy." *Schwartz*, 153 F.4th at 928. *See also Arias*, 150 F.4th at 49 (a previously unconsidered alternative remedy did not make a context "new" because it was not a "legal development that would require reweighing the costs and benefits of a damages remedy against federal officials . . . in a way that the Court has not already weighed them in recognizing the cause of action in *Bivens* itself" (quotation marks omitted)).

more solidly supported in the precedent than it already was."). The district court's analysis, which relies on *Lewis* in collapsing that framework, should be reversed.

If the district court's analysis is left uncorrected, *Bivens* claims in this Circuit, alike in every respect except the venue in which they were filed, will be treated differently. Some claims will be subject to the *Bivens* two step, with a court first determining whether a claim presents a new context before it conducts the special-factors analysis. If the claim does not present a new context, it will be allowed to proceed. *See, e.g.*, *Lehal v. Cent. Falls Det. Facility Corp.*, No. 1:13-cv-3923, 2019 WL 1447261, at *11–12 (S.D.N.Y. Mar. 15, 2019); *see also Bueno Diaz v. Mercuri*, 442 F. Supp. 3d 701, 708–09, 712 (S.D.N.Y. 2020) (assessing step two only in the alternative). Other claims, like Mr. Salaman's, will be subjected to a harsher standard. District courts like the one below will dismiss those claims if they arise in a new context *or* if an alternative remedial scheme exists, even if the claims are virtually identical to an existing *Bivens* claim, and even if the Supreme Court has already considered that remedial scheme. *See* A89–90. This would, in effect, do what the Supreme Court has not done and overrule *Bivens,* undercutting its admonition that *Bivens* is "settled law" in the "common and recurrent sphere of law enforcement," and destabilizing litigants' "reliance upon it as a fixed principle." *See Ziglar*, 582 U.S. at 134. *See also Edwards v. Gizzi*, 107 F.4th 81, 87 (2d Cir. 2024) (per curiam) (Robinson, J. concurring in the judgment) ("[W]e . . . must follow the

Supreme Court's directive that in the heartland cases, *Bivens* relief remains alive and well.").

### C. The District Court's Flawed *Bivens* Analysis Fails on Its Own Terms Because an FTCA Action Is Not an Alternative For a *Bivens* Claim.

Even if the existence of an alternative remedial scheme were enough to reject a heartland *Bivens* claim, the decision below still must be reversed. The district court determined that the availability of an FTCA claim precludes Mr. Salaman's Fourth Amendment excessive force claim, A89–90, but Congress views the FTCA as a complement, not an alternative, to *Bivens*. Accordingly, the Supreme Court in *Carlson v. Green* explicitly held that the FTCA is not an alternative remedy that precludes a *Bivens* action, 446 U.S. at 18–23, and the Court has reaffirmed that holding throughout its modern *Bivens* jurisprudence. The district court erred by ignoring *Carlson* and the congressional intent it memorialized, which squarely control this question.

#### 1. Binding Supreme Court precedent holds that a suit under the FTCA is not an alternative remedy to a *Bivens* claim.

The FTCA "allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 592 U.S. 209, 210 (2021). Before the statute was enacted in 1946, "a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States." *Id.* at 211. Nonetheless, the Government would often indemnify defendant employees, with

Congress considering and passing (sometimes hundreds of) private bills each year to award compensation to injured individuals. *Id.* The FTCA streamlined this scheme. The statute "waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment" and required plaintiffs "to bring claims under the FTCA in federal district court," while also making "it more difficult to sue the employees themselves." *Id.* at 212 (quotation marks omitted). The upshot is that "[w]hen federal employees are sued for damages for harms caused in the course of their employment," the FTCA "generally authorizes substitution of the United States as the defendant." *Hui v. Castaneda*, 559 U.S. 799, 801 (2010). *See also generally* 28 U.S.C. §§ 1346, 2671–80.

In 1974, Congress amended the FTCA to create a cause of action against the United States for certain intentional torts committed by federal law enforcement officers. *See id.* § 2680(h); Pub. L. No. 93-253, §2, 88 Stat. 50. When it did so, Congress made clear it was legislating against the backdrop of *Bivens*, which the Supreme Court had decided three years earlier. The congressional comments accompanying the amendment explicitly stated that the "provision should be viewed as a counterpart to the *Bivens* case and its [progeny]," as it "make[s] the Government independently liable in damages for the same type of conduct . . . for which [*Bivens*] imposes liability upon the individual Government officials involved." S. Rep. No.

93-588, p.3 (1973). Thus, after the amendment, plaintiffs had "a cause of action against the individual Federal agents *and* the Federal Government." *Id.* (emphasis added).

Compelled by this statutory history, the Supreme Court held in *Carlson* that the FTCA is not an alternative remedial scheme for *Bivens* actions. *See* 446 U.S. at 18–23. Decided in 1980, *Carlson* recognized a prisoner's damages claim against federal prison officials for failure to provide adequate medical care in violation of the Eighth Amendment. *Id.* at 18–19. This extension of *Bivens* was permitted, the Supreme Court held, in part because Congress had not "provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Id.* (emphasis omitted). *Carlson* squarely rejected the argument that the FTCA might be such a remedy. *Id.* at 19. As part of its reasoning, the Court relied on the FTCA's statutory history, holding that it showed that Congress viewed the FTCA and *Bivens* as providing "parallel, complementary causes of action." *Id.* at 19–20 (citing S. Rep. No. 93-588, p.3 (1973)).

The Supreme Court then ticked through a list of reasons supporting Congress's judgment. First, damages under the FTCA are recoverable against the United States, while damages under *Bivens* are recoverable against individuals, making the latter "a more effective deterrent." *Id.* at 21. Second, punitive

damages—which are "especially appropriate to redress the violation by a Government official of a citizen's constitutional rights"—are prohibited under the FTCA but available in a *Bivens* suit. *Id.* at 22. Third, a plaintiff may not "opt for a jury" under the FTCA, though may do so in a *Bivens* action. *Id.* And fourth, while an FTCA action's viability depends on state law, "the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform" federal rules. *Id.* at 23. All told, it was "crystal clear" to the Court that Congress meant the FTCA and *Bivens* to be complements, not alternatives. *Id.* at 19–20.

In the years since *Carlson*, that congressional intent has only ever been confirmed. Congress further amended the FTCA in 1988 through the so-called Westfall Act, which makes the FTCA "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui*, 559 U.S. at 806. *See also* Federal Employees Liability Reform and Tort Compensation Act, Pub. L. No. 100-694, 102 Stat. 4563, codified at 28 U.S.C. § 2679. In other words, the Westfall Act generally requires plaintiffs suing federal employees to use the FTCA. However, it includes a clear exception for *Bivens* claims: The exclusive-remedy provision does not apply to any claim brought "for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). So when Congress channeled most plaintiffs to the FTCA's statutory remedy, it specifically counted on the availability of a *Bivens* remedy for plaintiffs suing federal agents for constitutional violations.

The Supreme Court has likewise reaffirmed *Carlson*'s FTCA holding. In *Correctional Services Corporation v. Malesko*, the Court reiterated "that Congress intended the FTCA and *Bivens* to serve as parallel and complementary sources of liability." 534 U.S. 61, 68 (2001) (quotation marks omitted). In *Wilkie v. Robbins*, the Court did not treat a possible FTCA action as an alternative remedy sufficient to preclude the plaintiff's *Bivens* claim, citing *Carlson*'s holding "that the availability of [an FTCA remedy] did not preempt" a *Bivens* remedy. 551 U.S. 537, 553 (2007). In *Hernandez*, the Court discussed the FTCA's carve-out for constitutional claims, noting that by excepting those claims from the exclusive-remedy provision, "Congress made clear that it was not attempting to abrogate *Bivens*." 589 U.S. at 111 n.9. Rather, the Court explained, Congress "left *Bivens* where it found it." *Id.* Finally, in *Egbert*, even though the defendant argued that the (new) *Bivens* claim there was preempted by the FTCA, the Court did not endorse that contention. *See e.g.*, Brief for Petitioner at 39–40, *Egbert v. Boule*, 596 U.S. 482 (2022) (No. 21-147), 2021 WL 6118300, at *39–40. This silence was significant: A separate writing in the case highlighted the Court's unwillingness to co-sign the FTCA argument, and the majority opinion said nothing to refute that understanding. *See Egbert*, 596 U.S. at 524 at n.7 (Sotomayor, J., concurring in the judgment in part and dissenting in part).

### 2. Other courts recognize that the FTCA is not an alternative remedy.

Confronted with clear evidence of congressional intent and decades of binding precedent, courts across the country have recognized, as they must, that a suit under the FTCA is not an alternative to a *Bivens* action.[13]

The Seventh Circuit has repeatedly acknowledged that the FTCA "does not displace a *Bivens* claim in the narrow cases where it is available." *See Snowden*, 72 F.4th at 246 n.4. In *Snowden*, the Seventh Circuit allowed the Fourth Amendment excessive force claim to move forward after concluding that even if the court considered the availability of an FTCA remedy at *Bivens* step one, the FTCA did "not suggest that [the plaintiff's] claim [arose] in a new context." *Id.* (citing *Carlson*, 446 U.S. at 20, and *Hernandez*, 589 U.S. at 111 n.9). *See also Sargeant v. Barfield*, 87 F.4th 358, 368 n.5 (7th Cir. 2023) (affirming dismissal of a *Bivens* claim but rejecting the defendant's argument that the FTCA was "a reason to hesitate," noting

[13] Some in this Circuit have already done the same. In *Edwards*, this Court affirmed a judgment to dismiss an Eighth Amendment excessive force claim in a three-sentence per curiam opinion. 107 F. 4th at 82. Judge Parker dissented, finding the plaintiff's claim against federal law enforcement officers to be "precisely the type of claim that *Bivens* has always been thought to cover." *Id.* at 91. Even assuming the plaintiff's case presented a new context, Judge Parker wrote that the "existence of the Federal Tort Claims Act, which imposes liability against the United States and not against individual officers—is clearly not an 'alternative remedial scheme' for a constitutional remedy that is centered entirely [on] individual officer deterrence." *Id.* (Parker, J., dissenting). The unreasoned per curiam opinion contained no analysis of that factor.

that "*Carlson* acknowledged the FTCA and concluded that a *Bivens* remedy was still necessary").

The Sixth Circuit likewise has relied on *Carlson* and its holding that "the FTCA is not meant to displace *Bivens* actions, and the two act in concert." *See Koprowski v. Baker*, 822 F.3d 248, 253–54 (6th Cir. 2016) (finding similar the Inmate Accident Compensation Act and the FTCA, and therefore concluding from *Carlson* that the former "does not displace *Bivens* actions for prison workers"); *see also Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 777 (6th Cir. 2014) (distinguishing the Federal Mine Health and Safety Act of 1977 from the FTCA and therefore declining to extend a *Bivens* remedy).

The Ninth Circuit has held that the "FTCA on its own does not suffice" as an "adequate alternative remedy" because it does not "afford[] comparable deterrence and compensation options." *Quintero Perez v. United States*, 8 F.4th 1095, 1105 (9th Cir. 2021). That court recognized that the "Supreme Court has been unequivocal" that "the FTCA, which provides 'the threat of suit against the United States,' is 'insufficient to deter the unconstitutional acts of individuals,'" *id.* (quoting *Malesko*, 534 U.S. at 68), even as it held that other special factors counseled against extending the *Bivens* remedy in that case, *id.* at 1105–07. *See also Reid v. United States*, 825 F. App'x 442, 445 (9th Cir. Sep. 2, 2020) (citing *Carlson* and concluding

that because the FTCA does not allow actions against individuals, it does not offer a means of deterring future misconduct).

And the First Circuit has agreed that the FTCA's statutory history evidences Congress's intent not to "abrogate *Bivens*." *See Arias*, 150 F. 4th at 48 (quoting *Hernandez*, 589 U.S. at 111, n.9). *Arias* highlighted that Congress "explicitly excepted *Bivens* claims from the Westfall Act's exclusivity requirement" as it reversed a grant of summary judgment to defendants on a plaintiff's excessive force claims. *Id.* (citation modified). *See also id.* at 53 n.13 (Lynch, J. concurring in part and dissenting in part) ("It is true that *Hernandez* found that the . . . FTCA[] is not an alternative remedy that abrogates *Bivens*.").

District courts in this Circuit have also recognized and relied on the congressional intent memorialized in *Carlson*. *See, e.g.*, *Bueno Diaz*, 442 F. Supp. 3d at 711 (S.D.N.Y. 2020) ("The Supreme Court's prior rulings in *Carlson* . . . and *Robbins* remain good law. The Court will follow that precedent." (internal citations omitted)); *Carattini*, 2024 WL 3274663, at *5; *Mirvis v. Quay*, No. 1:19-cv-2573, 2023 WL 5671935, at *10 (E.D.N.Y. Sep. 1, 2023); *Powell v. United States*, No. 1:19-cv-11351, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020). Under binding Supreme Court precedent, this Court should do the same.

### 3. The district court's holding that the FTCA is an alternative remedy was error.

Despite this weight of authority, the district court below determined that the FTCA "forecloses a *Bivens* action against FBI agents for excessive force under the Fourth Amendment." A89. The district court did not grapple with the statutory history of the FTCA or the Supreme Court's square holding on this question. The court cited only *Oliveras v. Basile*, 440 F. Supp. 3d 365 (S.D.N.Y. 2020), a district-court decision that doubted *Carlson*'s reasoning had "survived *Ziglar*," *id.* at 373. *See* A89. The court below hinted at the vulnerability of its ruling in a footnote. After stating—incorrectly—that "[n]either the Supreme Court nor the Second Circuit has explicitly decided" that "the availability of an FTCA action precludes the *Bivens* remedy" in the wake of *Ziglar*, the district court flagged that "some courts have been unwilling to determine that the FTCA alone is a sufficient alternate remedy." A89 n.2 (quotation marks omitted).

The district court's analysis, and that of *Oliveras*, rests on a flawed assessment of the Supreme Court's modern *Bivens* jurisprudence.[14] The Court has stood by its assessment that the FTCA is no replacement for *Bivens*. *See supra* pp. 30–34. And

[14] *Oliveras* at least correctly acknowledged that the court was "required to follow the rigorous two-step inquiry to determine whether to imply a *Bivens* cause of action in a new context or against a new category of defendants." 440 F. Supp. 3d at 370 (citation modified). Thus, "[h]aving found that [the] Plaintiff's claims ar[o]se in a new context," *Oliveras* analyzed whether the FTCA was an alternative remedial structure that precluded relief. *Id.* at 372–75.

*Egbert*, one of the latest *Bivens* decisions from the Supreme Court, cautions that "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." 596 U.S. at 498. On this subject, Congress has spoken: The FTCA is a counterpart to *Bivens*, not a substitute. The district court erred by "second-guess[ing] that calibration." *See Egbert*, 596 U.S. at 498.

Certainly, the Court's treatment of alternative remedies has evolved since *Carlson*. *Carlson* and earlier cases held that an alternative remedy would not preclude a *Bivens* action unless defendants showed that Congress had "explicitly declared" that remedy "to be a substitute for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19 (emphasis omitted). "Since then," the Supreme Court has "explained that the absence of relief does not . . . necessarily imply that courts should award money damages," *Egbert*, 596 U.S. at 501 (quotation marks omitted), and that the existence of alternative remedial procedures may counsel against a *Bivens* suit even if such "procedures are not as effective as an individual damages remedy," *id.* at 498 (quotation marks omitted). But the Supreme Court in *Carlson* relied on more than congressional inaction or the Court's concerns that the FTCA was not as effective as *Bivens*. It pointed to clear evidence that Congress specifically intended to preserve the *Bivens* remedy. *See*

*supra* pp. 30–34. And the Court has repeatedly reaffirmed its recognition of that congressional intent. *See id.*

The Supreme Court's modern jurisprudence therefore has not disturbed *Carlson*'s FTCA holding. But even if this Court were to disagree, it still would be bound by *Carlson*. If a Supreme Court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls" and leave to the Supreme Court "the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation marks omitted). Here, that precedent makes clear that the FTCA does not preclude Mr. Salaman's *Bivens* claim, no matter where in the framework this Court considers it.

### D. Even If Mr. Salaman's Fourth Amendment Excessive Force Claim Presents a New *Bivens* Context, No Special Factors Counsel Against Extending a *Bivens* Remedy.

The Court can and should end its analysis at the first step of the *Bivens* framework. Mr. Salaman's Fourth Amendment excessive force claim is not meaningfully different from the claim in *Bivens* itself and therefore does not present a new *Bivens* context. As a result, the Court has no cause to proceed to the second step. *Cf. Hernandez*, 589 U.S. at 103 ("*Because* petitioners assert claims that arise in a new context, we must proceed to the next step and ask whether there are factors that counsel hesitation.") (emphasis added); *Ziglar*, 582 U.S. at 140 (permitting

consideration of "potential special factors" at step one if "previous *Bivens* cases did not consider" them). Nonetheless, even if this Court advances to step two, no "special factors" counsel against recognizing an implied *Bivens* cause of action for Mr. Salaman's claim. *See Goldey*, 606 U.S. at 944 (per curiam). There is no "alternative, existing process for protecting [Mr. Salaman's] interest" that "amount[s] to a convincing reason" to refrain from providing a damages remedy, nor is there any "other feature of [his] case" that should give this Court "pause." *See Ziglar*, 582 U.S. at 137 (citation modified).

**1. No alternative remedies preclude a *Bivens* remedy for Mr. Salaman's claim.**

"[L]ike any special factor," the presence of "alternative remedial structures" suffices "to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (quotation marks omitted). No alternative remedy precludes the *Bivens* action here.

First and again, the FTCA is not an alternative remedy that displaces a heartland *Bivens* claim like Mr. Salaman's. As the Supreme Court expressly held in *Carlson*, Congress intended for the FTCA to complement constitutional claims against individual officers with a statutory cause of action against the United States. *See supra* pp. 32–33. That congressional intent has been reaffirmed in decades of binding precedent. *See supra* pp. 33–34. Courts across the country have recognized the same. *See supra* pp. 35–37.

No other alternative remedy precludes Mr. Salaman's claim. Though the district court did not discuss alternatives outside of the FTCA, the Supreme Court has previously held that an Executive Branch investigation may foreclose a new *Bivens* action. *See Egbert*, 596 U.S. at 497–98. Mr. Salaman's complaint indicates that he corresponded with the New Haven FBI and the Department of Justice after he was allegedly shot. *See* A18–20 ¶¶ 38–44. But those communications do not counsel against a damages remedy for Mr. Salaman.

The letter Mr. Salaman ultimately received from the Department explicitly states that an "investigation was not initiated" in response to his complaint. A19, A67. Although the Department purported to "mandate[] action be taken to address the concerns" Mr. Salaman raised, the Department refused to "comment further on those specific actions." *Id.* This correspondence looks nothing like the actual investigations that the Supreme Court has relied on to bar relief in the past. *See Egbert*, 596 U.S. at 497 (describing a "year-long internal investigation into Agent Egbert's conduct"); *Hernandez*, 589 U.S. at 97, 104–05 ("[T]he Department of Justice conducted an investigation" but "concluded that Agent Mesa had not violated Customs and Border Patrol policy or training" and "declined to prosecute."); *see also Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (no *Bivens* extension where Congress had already devised an "elaborate remedial scheme"); *Bush v. Lucas*, 462 U.S. 367, 368, 385–86 (1983) (no *Bivens* extension where a claim was "governed by

comprehensive procedural and substantive provisions giving meaningful remedies against the United States"). Mr. Salaman's communications with the Department do not bar relief.[15]

### 2. No other special factors preclude a *Bivens* remedy for Mr. Salaman's claim.

No other special factor precludes Mr. Salaman's claim, either. The Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" *Ziglar*, 582 U.S. at 136, but Mr. Salaman's case does not involve any of the overlays that have "raise[d] warning flags" in the past, *see Hernandez*, 589 U.S. at 103. For example, even if the court discerns some differences between Mr. Salaman's claim and the claim in *Bivens*, at minimum this case involves no new constitutional provision, mechanism of injury, or category of defendants, so there is little reason to think that recognizing his claim would "impose a significant expansion of Government liability," *contra Egbert*, 596 U.S. at 500 (quotation marks omitted), or inflict "systemwide consequences," *cf. id.* at 493 (quotation marks omitted). *See also, e.g.*, *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens*

[15] Even if Mr. Salaman's correspondence with the Department were considered at step one of the *Bivens* framework, it still would not preclude relief. *Ziglar* "did not suggest that the *mere existence* of a previously unconsidered administrative mechanism for lodging misconduct complaints made the context new." *Arias*, 150 F.4th at 42 (emphasis added). And the scheme for complaints like Mr. Salaman's does not make the context of his claim "different in a way that is meaningful." *Id.* at 45. Indeed, to reach that conclusion here, this Court would also have to conclude that the Supreme Court has "invited lower courts to render unavailable in any context the remedy that it has deemed necessary in the context that *Bivens* itself presented." *Id.* at 49.

to permit suit against federal agencies because of the "potentially enormous financial burden for the Federal Government"). There are no "potential effect[s] on foreign relations," national security, or cross-border security. *Contra Hernandez*, 589 U.S. at 103; *Egbert*, 596 U.S. at 494. This case does not implicate the unique considerations of the U.S. military. *Contra Chappell v. Wallace*, 462 U.S. 296, 298–300 (1983); *United States v. Stanley*, 483 U.S. 669, 683–84 (1987). And Mr. Salaman does not challenge policies or "sensitive functions of the Executive Branch." *Contra Ziglar*, 582 U.S. at 141.

Mr. Salaman seeks damages only for the Fourth Amendment violation that resulted when line-level FBI agents fired a shotgun six times into a kitchen door that he was attempting to open in compliance with instructions. That unconstitutionally excessive force is exactly what *Bivens* is meant to deter. *See Ziglar*, 582 U.S. at 140.

## CONCLUSION

This Court should reverse the dismissal of Mr. Salaman's Fourth Amendment excessive force claim as to Special Agents Carney and Campbell and remand to the district court for further proceedings.

Dated: March 2, 2026

Respectfully submitted,

*/s/ Victoria Stilwell*

Victoria Stilwell
David M. Zionts
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
vstilwell@cov.com
dzionts@cov.com

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW
FNT 1
#33821
Washington, DC 20033
(202) 455-4399
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that this document complies with the word limit of Local Rule 32.1(a)(4)(A) because it contains 11,228 words, exclusive of the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). The undersigned further certifies that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2510 in Times New Roman size 14 font.

Dated: March 2, 2026

*<u>/s/ Victoria Stilwell</u>*
Victoria Stilwell

*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d)(1)(B), I hereby certify that on March 2, 2026, I caused true and correct copies of the foregoing Brief of Plaintiff-Appellant and the Appendix thereto to be served on counsel of record, via filing on the Court's ACMS system, in accordance with Local Rule 25.1(h).

Dated: March 2, 2026

*/s/ Victoria Stilwell*
Victoria Stilwell

*Attorney for Plaintiff-Appellant*

# ADDENDUM

# TABLE OF CONTENTS

**Page**

28 U.S.C. § 1915A ........................................................................................ 1a

28 U.S.C. § 2679(a), (b) ................................................................................ 1a

28 U.S.C. § 2680(h) ...................................................................................... 2a

**28 U.S.C. § 1915A**

**§ 1915A. Screening**

**(a) Screening**.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for Dismissal**.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

**(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

**(2)** seeks monetary relief from a defendant who is immune from such relief.

**(c) Definition.**--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

**28 U.S.C. § 2679(a), (b)**

**§ 2679. Exclusiveness of remedy**

**(a)** The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

**(b) (1)** The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee

or the employee's estate is precluded without regard to when the act or omission occurred.

**(2)** Paragraph (1) does not extend or apply to a civil action against an employee of the Government--

**(A)** which is brought for a violation of the Constitution of the United States, or

**(B)** which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

* * *

**28 U.S.C. § 2680(h)**

**§ 2680. Exceptions**

The provisions of this chapter and section 1346(b) of this title shall not apply to--

* * *

**(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

* * *