# No. 25-2311

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

LUIS SALAMAN,

Plaintiff-Appellant,

v.

DAVID CARNEY, (SA); (ATL); in his or her individual capacity, JOSEPH ALTIMARI, (SSA); in his or her individual capacity, ANISH SHUKLA, (SSA); in his or her individual capacity,

*(caption continued on the inside cover)*

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Connecticut

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF AFFIRMANCE**

BRETT A. SHUMATE
*Assistant Attorney General*

DAVID X. SULLIVAN
*United States Attorney*

MELISSA N. PATTERSON
JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7321*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3542*

BULLETS W. CAMPBELL, (SA); (STL); in his or her individual capacity, JONATHAN W. LAURIA, (SA); (ATL); in his or her individual capacity, JOSHUA LEWIS YOUNG, (SA); in his or her individual capacity, ADAM DOUGLAS JONES, (SA); in his or her individual capacity, TAE H. KIM, (SA); in his or her individual capacity, BRIAN HANKO, (SA); in his or her individual capacity, ANDREW PAPPAS, (SA); in his or her individual capacity, RUSSELL HEBER FRANDSEN, (SA); in his or her individual capacity, DANIEL MORRISON, (SA); in his or her individual capacity, BRENDAN MURPHY, (SA); in his or her individual capacity, STEVEN RICHARD RENDON, (SA); in his or her individual capacity, NIKOLAUS SWANCOTT, (SA); in his or her individual capacity, JAMES DOMACHOWSKI, (SA); in his or her individual capacity, and ZACHARY BURKE, (SA); in his or her individual capacity,

Defendants-Appellees.

# TABLE OF CONTENTS

**Page**


STATEMENT OF JURISDICTION ....................................................................1

INTERST Of THE UNITED STATES ..............................................................1

STATEMENT OF THE ISSUE.........................................................................1

STATEMENT OF THE CASE..........................................................................2

A. Legal Background ..........................................................................2

B. Factual Background........................................................................4

C. Prior Proceedings............................................................................6

SUMMARY OF ARGUMENT...........................................................................7

STANDARD OF REVIEW ..............................................................................9

ARGUMENT......................................................................................................9

THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S *BIVENS* CLAIMS. ..................................................................................................9

A. Courts must exercise extreme caution before extending *Bivens* to new contexts. ..........................................................................................9

B. Plaintiff's claim is meaningfully different from *Bivens.*...............................10

1. This case involves a different legal mandate..................................11

2. This case involves a different level of intrusion into Executive Branch operations and task force cooperation with local authorities. ..............................................................13

C. Special factors preclude the judicial fashioning of a damages cause of action here. ..........................................................................................15

1. Alternative remedial structures foreclose a *Bivens* remedy. ............15

2. Permitting a *Bivens* remedy against FBI agents assisting Task Force operations may interfere with the federal relationship with state and local law enforcement and adversely affect public safety. ....................19

D. Plaintiff offers no basis for disturbing the district court's judgment. ....................21

CONCLUSION .................... 25

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Annappareddy v. Pascale*,
996 F.3d 120 (4th Cir. 2021) .......... 13

*Arar v. Ashcroft*,
585 F.3d 559 (2d Cir. 2009) .......... 9

*Arias v. Herzon*,
150 F.4th 27 (1st Cir. 2025), *filed*,
No. 25A1226 (U.S. May 7, 2026) .......... 12-13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) .......... 1, 2, 6, 7, 11

*Bulger v. Hurwitz*,
62 F.4th 127 (4th Cir. 2023) .......... 14

*Bush v. Lucas*,
462 U.S. 367 (1983) .......... 15, 23

*Cain v. Rinehart*,
No. 22-1893, 2023 WL 6439438 (6th Cir. July 25, 2023) .......... 12, 14, 16, 20

*Carlson v. Green*,
446 U.S. 14 (1980) .......... 3, 15, 21

*Correctional Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .......... 2, 3, 9

*Davis v. Dotson,*
No. 20-13123, 2021 WL 5353099 (11th Cir. Nov. 17, 2021) .......... 18

*Davis v. Passman*,
442 U.S. 228 (1979) .......... 2

*Edwards v. Gizzi*,
107 F.4th 81 (2d Cir. 2024) .......... 19, 22

*Egbert v. Boule*,
596 U.S. 482 (2022) .......... 3, 4, 9, 10, 15, 16, 17, 18, 19, 20, 23

*Enriquez-Perdomo v. Newman*,
149 F.4th 623 (6th Cir. 2025) ........................................................................... 12

*Goldey v. Fields*,
606 U.S. 942 (2025) ..................................................................................... 24

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ............................................................................. 4, 9, 21

*Hudson v. Michigan*,
547 U.S. 586 (2006) ..................................................................................... 17

*Lewis v. Bartosh*,
No. 22-3060, 2023 WL 8613873 (2d Cir. Dec. 13, 2023) ................................... 7, 14

*Logsdon v. U.S. Marshal Serv.*,
91 F.4th 1352 (10th Cir. 2024) ........................................... 12, 13-14, 16, 17, 20

*Mejia v. Miller*,
61 F.4th 663 (9th Cir. 2023) ........................................................................... 23

*Oliva v. Nivar*,
973 F.3d 438 (5th Cir. 2020) ......................................................................... 18

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024) ............................................................................. 6

*Orellana v. Godec*,
145 F.4th 516 (4th Cir. 2025) ............................................................ 12, 13, 14, 20

*Payton v. New York*,
445 U.S. 573 (1980) ..................................................................................... 11

*Pettibone v. Russell*,
59 F.4th 449 (9th Cir. 2023) ........................................................................... 23

*Robinson v. Sauls*,
102 F.4th 1337 (11th Cir. 2024) ................................................................ 13, 14

*Salaman v. Carney*,
No. 3:25-CV-482, 2025 WL 2432674 (D. Conn. Aug. 22, 2025) ................................ 6

*Schwarz v. Meinberg*,
761 F. App'x 732 (9th Cir. 2019) ................................................................ 18-19

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) .......... 16

*Snowden v. Henning*,
72 F.4th 237 (7th Cir. 2023) .......... 19

*United States v. Leon*,
468 U.S. 897 (1984) .......... 12

*United States v. Norwood*,
602 F.3d 830 (7th Cir. 2010) .......... 18

*Wilkie v. Robbins*,
551 U.S. 537 (2007) ..........23

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .......... 3, 4, 7-8, 8, 9, 10, 11, 15, 23

**Statutes:**

Federal Tort Claims Act (FTCA):
28 U.S.C. § 1291 .......... 1
28 U.S.C. § 1346(b)(1) .......... 18
28 U.S.C. § 2680(h) .......... 18

5 U.S.C. § 413(b)(2) .......... 17

5 U.S.C. § 413(b)(2)-(3) .......... 17

18 U.S.C. § 2 .......... 4

21 U.S.C. § 841(a)(1) .......... 4

21 U.S.C. § 841(b)(1)(B)(vi) .......... 4

28 U.S.C. § 531 .......... 17

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1915A .......... 1, 6

28 U.S.C. § 1915A(b)(1) .......... 7

31 U.S.C. § 3724 .......... 18

**Regulations:**

5 C.F.R. § 735.103 ........................................................................................................ 16

28 C.F.R. § 0.29c(d) ..................................................................................................... 17

28 C.F.R. § 45.1 ............................................................................................................ 16

**Rules:**

Fed. R. App. P. 4(a)(1)(B)(iv) ....................................................................................... 1

Fed. R. Crim. P. 41(c)(2)(A) ..................................................................................... 11, 12

**Other Authorities:**

FBI, *Contact Us: Field Offices*, https://www.fbi.gov/contact-us/field-offices.................17

FBI, *Different Task Forces, One Mission*, https://www.fbi.gov/image-repository/ infographic-different-task-forces-one-mission-102425.jpg/view ...............................20

FBI, *What We Investigate: Violent Gang Task Forces*, https://www.fbi.gov/ investigate/violent-crime/gangs/violent-gang-task-forces .................................. 5, 20

OIG, U.S. Dep't of Just., *Submitting a Complaint*, https://perma.cc/J6U5-UVBJ .........................................................................17

Verdict Form, *United States v. Salaman*, No. 3:22-cr-00076 (D. Conn. Dec. 19, 2024), Dkt. 499.........................................................................6

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The district court dismissed the complaint and entered final judgment on August 22, 2025. A97. Plaintiff filed a timely notice of appeal on September 15, 2025, within the 60 days allowed under Federal Rule of Appellate Procedure 4(a)(1)(B)(iv). A98. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## INTERST OF THE UNITED STATES

Plaintiff asserted individual-capacity claims against several defendants, all of whom were federal officials at FBI during the relevant period. *See* A5. None of the individual defendants have been served, and they are not represented in this appeal. Instead, the district court screened and dismissed the *Bivens* claims under 28 U.S.C. § 1915A. The United States has a substantial interest in the resolution of this case. *Bivens* claims, which are brought against federal officials in their personal capacities, can deter such officials from performing their duties. And the Department of Justice often represents defendants in *Bivens* cases. As an amicus curiae, the government urges this Court to affirm the district court's judgment.

## STATEMENT OF THE ISSUE

Plaintiff Luis Salaman filed suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that various federal officers involved in a Federal Bureau of Investigation (FBI) task force operation used excessive force against him in violation of the Fourth Amendment during the

execution of search and arrest warrants at his home. Plaintiff alleges that, at the direction of defendant FBI Agent Bullets W. Campbell, defendant FBI Agent David Carney fired breaching shots at the door to plaintiff's residence, injuring plaintiff who was behind the door. The question presented is:

Whether the district court correctly declined to extend *Bivens* to plaintiff's Fourth Amendment claims for excessive force against federal officers involved in task force operations in executing a warrant.

## STATEMENT OF THE CASE

### A. Legal Background

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* held that, despite the absence of a statutory cause of action, federal law-enforcement officials could be sued for money damages for conducting a warrantless search and arrest in a person's home, accompanied by the excessive use of force, in violation of the Fourth Amendment. 403 U.S. at 389. The Court has approved of an implied damages remedy under the Constitution only two other times, in *Davis v. Passman*, 442 U.S. 228 (1979), for an equal-protection violation involving sex discrimination in congressional-staff employment, and in

*Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth Amendment violation involving the failure to treat an inmate's asthma, resulting in his death.

Since then, "the Court has not implied additional causes of action under the Constitution" and has "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quotation marks omitted). When *Bivens*, *Davis*, and *Carlson* were decided, the Court was in its "heady days in which [it] assumed common-law powers to create causes of action." *Id.* (quoting *Malesko*, 534 U.S. at 75 (Scalia, J., concurring)). The Court has since rejected that approach, explaining that "a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017). Since that "notable change in the Court's approach to recognizing implied causes of action," the Court has " 'consistently refused to extend *Bivens* to any new context or new category of defendants.' " *Id.* at 135 (quoting *Malesko*, 534 U.S. at 68). For that reason, the Court has explained, "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 134.

The Supreme Court's most recent decision, *Egbert*, confirmed that a court should undertake a two-part test to determine whether it can create a new cause of action against federal officials in their personal capacities. First, a court must determine whether the claim arises in a " 'new *Bivens* context' " by determining whether the case is " 'meaningful[ly]' different from" the three previous *Bivens* cases in which the Supreme Court has recognized a damages action. *Egbert*, 596 U.S. at 492

(alteration in original) (quoting *Abbasi*, 582 U.S. at 139). Second, if the case arises in a new context, the court must consider whether any special factors "indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.' " *Id.* (quoting *Abbasi*, 582 U.S. at 136). "If there is even a single 'reason to pause,' " the court cannot allow the *Bivens* claim to proceed. *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). In asking whether special factors counsel hesitation, the court gives important weight to " 'separation-of-powers principles' " and "consider[s] the risk of interfering with the authority of the other branches." *Hernandez*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 135). This inquiry "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. In most cases, the answer to that question will be an emphatic "yes." *See id.* at 493.

### B. Factual Background

This case arises from the execution of an arrest warrant for plaintiff and a search warrant for his home. Prior to his arrest, the government charged plaintiff with possession with intent to distribute, and distribution of, at least 40 grams of fentanyl, 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), and with aiding and abetting, 18 U.S.C. § 2; *see* Criminal Complaint at 1, *United States v. Salaman*, No. 3:22-cr-00076 (D. Conn. Apr. 1, 2022), Dkt. 1. The government secured a warrant for plaintiff's arrest and a warrant to search his home. *Id.*; *see also* Complaint Attachments 8 & 10, *Salaman v.*

*Carney*, No. 3:25-cv-482 (D. Conn. Mar. 24, 2025), Dkt. No. 1 (discussing warrants); A91 (same).

Plaintiff's complaint alleges that a team from the FBI's New Haven Safe Streets Gang Task Force and an FBI Special Weapons and Tactics (SWAT) team, including 16 federal agents and at least two task force officers named in the complaint, raided his home while he was sleeping. *See* A9. The Task Force is one of 178 Violent Gang Safe Streets Task Forces nationwide. *See* FBI, *What We Investigate: Violent Gang Task Forces*, https://www.fbi.gov/investigate/violent-crime/gangs/violent-gang-task-forces. The Task Force, led by the FBI, "comprises federal, state, and local law enforcement personnel, and . . . is tasked with investigation of violent crime in the City of New Haven and surrounding communities." Master Affidavit in Support of: (1) Criminal Complaints and Arrest Warrants, and (2) Search of Facebook Account, Premises, and Cell Phones at 1, *Salaman*, No. 3:22-cr-00076 (Apr. 1, 2022), Dkt. 1-1 (Affidavit); *see also* Testimony of Grant D. Ashley, Assistant Dir., Crim. Investigative Div., FBI, before the Senate Judiciary Committee (Sep. 17, 2003), https://perma.cc/VWS9-B2DK (safe streets task forces focus on "street gang and drug-related violence, address specific violent crime problems through the teaming of federal, state, and local law enforcement officers and prosecutors to conduct long-term, proactive investigations").

After the team identified themselves as "FBI" and instructed the occupants of the house to open the door, defendant Carney, an FBI Agent and member of the

SWAT team, breached the door by firing shots at the instruction of defendant FBI Agent Campbell. A10-12. Plaintiff alleges that he was on the other side of the door and was injured in his left knee and hand by breaching shots or debris. A11. After breaching the door, plaintiff alleges that Agent Carney "point[ed] his shot gun" at plaintiff and arrested him. A12. Plaintiff was taken outside, questioned by a Task Force Officer, and transported to an FBI field office, where his wounds were treated. A12-14.

Plaintiff was subsequently convicted by a jury of drug-related offenses. Verdict Form, *Salaman*, No. 3:22-cr-00076 (Dec. 19, 2024), Dkt. 499.

### C. Prior Proceedings

Plaintiff filed a complaint, naming Agents Carney and Campbell and 15 other FBI agents as defendants, pursuant to *Bivens*, 403 U.S. at 389.[1] Prior to the service of the complaint on defendants, the district court dismissed all of plaintiff's claims in a screening order, pursuant to 28 U.S.C. § 1915A. *See Salaman v. Carney*, No. 3:25-CV-482, 2025 WL 2432674, at *1 (D. Conn. Aug. 22, 2025) (Dooley, J.); A80, A90-96.

As to his excessive force claim, the district court declined to hold that FBI agents are a "new category of defendant" but instead held that because plaintiff could file a claim under the Federal Tort Claims Act (FTCA) regarding the FBI agents'

[1] On appeal, plaintiff, now represented by counsel, challenges only the dismissal of his excessive force claim against agents Carney and Campbell. Opening Br. 11-13. He has forfeited any challenge to the dismissal of his other claims. *See Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 92 n.10 (2d Cir. 2024).

alleged use of force, the "availability of this 'alternative remedial structure' " foreclosed his claim. A88-89. The court acknowledged that "[n]either the Supreme Court nor the Second Circuit has explicitly 'decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes the *Bivens* remedy.' " A89 n.2. But the court emphasized how the Second Circuit had said "a *Bivens* remedy is generally 'unavailable' " if " 'a claim arises in a new context'— such as if it involves 'a new category of defendants'—or if there is an 'alternative remedial structure.' " A89 (emphasis omitted) (quoting *Lewis v. Bartosh*, No. 22-3060, 2023 WL 8613873, at *1 (2d Cir. Dec. 13, 2023)). In the district court's view, the FTCA thus alone foreclosed plaintiff's claim.

## SUMMARY OF ARGUMENT

The district court correctly rejected plaintiff's *Bivens* claims against federal agents executing an arrest warrant in support of a federal task force. None of the individual defendants have been served, and they are not represented in this appeal. Instead, the court screened the *Bivens* claims under 28 U.S.C. § 1915A(b)(1) and dismissed those claims for failure to state a claim. As an amicus curiae, the government urges this Court to affirm that dismissal.

The Supreme Court's recent decisions have repeatedly made clear that implying new constitutional damages actions against federal employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is "disfavored" and impinges on the separation of powers. *Ziglar v. Abbasi*, 582 U.S.

120, 135 (2017) (quotation marks omitted). The "decision to recognize a damages remedy requires an assessment of [the remedy's] impact on governmental operations systemwide," and Congress is "better position[ed]" than the judiciary "to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. When considering whether to extend the damages remedy in *Bivens* beyond its recognized context, courts must first decide whether the case presents meaningful differences from *Bivens* and would thus further intrude on the separation of powers. *Id.*

The district court's decision is consistent with the important law-enforcement and separation-of-powers interests involved in executing an arrest warrant and working with state and local task force partners—features of this case that have no analog in *Bivens* itself. Plaintiff's claim would extend well beyond the context in which *Bivens* recognized an implied damages remedy, intruding on Congress's role to determine in the first instance whether a damages remedy should be available in this new context. In addition, special factors—such as the availability of alternative remedial schemes and the risk of disruption in the federal-state relationships involved in federal task force activities—preclude recognition of a *Bivens* remedy.

Because plaintiff's claim could not survive under the familiar two-step inquiry set out in *Abbasi*, *Egbert*, and this Court's cases, the Court need not decide whether the availability of the FTCA is better accounted for at the first or second step, or whether it collapses the two steps into one.

## STANDARD OF REVIEW

The order dismissing plaintiff's *Bivens* actions presents an issue of law that is reviewed de novo. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009).

## ARGUMENT

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S *BIVENS* CLAIMS.

### A. Courts must exercise extreme caution before extending *Bivens* to new contexts.

Federal courts have limited authority "to imply a new constitutional tort[] not expressly authorized by statute." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court has recently emphasized that creating a *Bivens* remedy is a " 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *see also Egbert v. Boule*, 596 U.S. 482, 490-91 (2022) (describing the only three contexts in which the Supreme Court has recognized a *Bivens* cause of action).

The Supreme Court in *Abbasi* and *Egbert* established stringent criteria to assess whether an implied damages remedy is available at all. The two-step test set out in *Abbasi* and *Egbert* asks (1) whether the claim seeks to extend *Bivens* to a " 'new context' or involves a 'new category of defendants' "; and, if so, (2) whether any special factors counsel hesitation against extending *Bivens* to that context. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (quoting *Malesko*, 534 U.S. at 68). "If there is a rational reason to think that" Congress, rather than the judiciary, should decide whether to create a cause of

action, as there "will be in most every case," "no *Bivens* action may lie." *Egbert*, 596 U.S. at 492. Plaintiff's claim fails under this two-step test.

### B. Plaintiff's claim is meaningfully different from *Bivens*.

Under well-established principles, plaintiff's claim is meaningfully different from that the Supreme Court recognized in *Bivens* and thus arises in a new context.

A court cannot extend *Bivens* to a new context even based solely on " 'parallel circumstances' " with the facts in the three recognized *Bivens* contexts; the claims must also "satisf[y] the 'analytic framework' prescribed by the last four decades of intervening case law." *Egbert*, 596 U.S. at 501 (quoting *Abbasi*, 582 U.S. at 139). *Egbert*, for example, held that while that case and *Bivens* itself involved similar allegations of excessive force, those "superficial similarities are not enough to support the judicial creation of a cause of action." *Id.* at 495. The reluctance to extend *Bivens* is rooted in constitutional concerns. "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 582 U.S. at 133. Accordingly, a case may present a new context from the three the Supreme Court has recognized, despite factual similarities, where that new claim presents a novel "risk of disruptive intrusion by the Judiciary into the functioning of other branches" or requires the examination of different "judicial guidance as to how an officer should respond to the

problem or emergency to be confronted." *Id.* at 139-40 (explaining that such "differences . . . are meaningful enough to make a given context a new one").

In addition to the availability of the FTCA, *see* A88-89, plaintiff's claims arise in a new context because they present two meaningful differences from the claim in *Bivens*.

**1. This case involves a different legal mandate.**

Damages claims against officers carrying out judicial commands present different separation-of-powers concerns than those in *Bivens*. Officers executing a warrant operate under a different legal mandate than those involved in the warrantless search and arrest in *Bivens*. Searches inside a home without a warrant are presumptively unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980), and the remedy devised in *Bivens* deterred the core harms of the warrantless nature of that search and arrest. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 392 (1971). In *Bivens*, the probable-cause determination for the arrest and the corresponding decision to use force were made by on-the-scene officers, rather than a magistrate. By contrast, an arrest pursuant to a warrant represents the determination of a neutral magistrate that an arrest is supported by probable cause, and any arrest made under that warrant thus occurs under a different legal mandate than the warrantless search and arrest in *Bivens*. *See* Fed. R. Crim. P. 41(e)(2)(A) (reflecting the requirement that an arrest warrant "must command" an officer to make an arrest). In addition, a search warrant is a magistrate's authorization to enter the

premises and search it. *Id.*; *cf. United States v. Leon*, 468 U.S. 897, 914 (1984) (A search warrant "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." (quotation marks omitted)).

Holding officers personally liable for damages when they were judicially authorized to enter and search a home and to use force to carry out an arrest also intrudes more on the separation of powers than did *Bivens*. Executing an arrest warrant involves substantially more planning and coordination at the outset than officers' on-the-ground decisions to make a warrantless arrest. The execution of an arrest warrant may involve coordination with other law-enforcement agencies, including state entities, as it did here. *See Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023) (no *Bivens* claim against local law enforcement officer temporarily deputized as a member of a federal fugitive-apprehension task force attempting to execute a warrant); *see also Orellana v. Godec*, 145 F.4th 516, 525 (4th Cir. 2025) (no *Bivens* claim against Marshals Service task force members acting under a warrant); *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024) (no *Bivens* claim against federal task force officers executing state court warrant); *see also Enriquez-Perdomo v. Newman*, 149 F.4th 623, 632 (6th Cir. 2025) ("If this were a search and arrest conducted *with* an enforceable warrant, that would almost certainly create a new *Bivens* context"). *But see Arias v. Herzon*, 150 F.4th 27, 36, 49-50 (1st Cir.

2025), *filed*, No. 25A1226 (U.S. May 7, 2026) (extending deadline for petition for certiorari until July 24, 2025).

An FBI task force's execution of a warrant is a complex, multi-agency activity, *cf. Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021). Given that arrests pursuant to a warrant—unlike on-the-spot arrests like those in *Bivens*—generally happen pursuant to a plan, allowing a damages remedy for excessive-force claims in executing an arrest warrant could potentially disrupt law-enforcement efforts to plan warrant execution, and the threat of damages liability might affect decisions about how to plan and staff such efforts. Such systemwide consequences go beyond the judicial intrusion on the "legislative endeavor" of "creating a cause of action" already authorized by *Bivens* in the context of warrantless searches.

### 2. This case involves a different level of intrusion into Executive Branch operations and task force cooperation with local authorities.

Extending a *Bivens* remedy to federal officers assisting task force operations could interfere with the delicate cooperation between federal, state, and local law enforcement critical to the functioning of these task forces.

In considering whether to extend *Bivens* to federal-state task force operations, the courts of appeals confronting the issue have agreed that cases involving the execution of arrest warrants by a Marshals Service task force arise in a new context, and that there are special factors counseling hesitation in this context. *See Orellana*, 145 F.4th at 524; *Robinson v. Sauls*, 102 F.4th 1337, 1344 (11th Cir. 2024); *Logsdon*, 91

F.4th at 1358; *Cain*, 2023 WL 6439438, at *4; *Lewis v. Bartosh*, No. 22-3060, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023). The Court should reach the same conclusion here. Like Marshal Service task force activities, FBI agents working with task force members are engaged in a meaningfully different type of police work than that in *Bivens*. *Cf. Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023) (enumerating special factors recognized by the Supreme Court).

Interference with FBI's authority and cooperative efforts with local law enforcement would have a meaningfully different impact on the Executive Branch's operations—including the government's ability to secure local partnerships—than the intrusion into routine law enforcement of suspected narcotics violations that was at issue in *Bivens*. *Cf. Orellana*, 145 F.4th at 524 (declining to extend *Bivens* to a case involving a task force, as these task forces operate under a different legal mandate and "raise federalism concerns that ordinary federal law-enforcement does not"); *see also Robinson*, 102 F.4th at 1345 ("Recognizing a cause of action for money damages against a task force member could impact cooperation among law enforcement agencies and the operation of these task forces."). The same distinctions obtain even where certain *Bivens* defendants are federal officers acting in support of the task force operations, like Agents Carney and Campbell, rather than directly part of the task force, like the other named defendants. Allowing a suit to proceed against federal officers involved in and supporting task force operations in executing a warrant would

pose similar risks to the mission of the task force and its ability to cooperate with state and local partners.

Extending *Bivens* to FBI agents engaged in cooperative law enforcement efforts with local police would thus present novel significant new separation-of-powers concerns not addressed in *Bivens* itself.

**C. Special factors preclude the judicial fashioning of a damages cause of action here.**

If a *Bivens* claim does arise in a new context, the court then must determine whether the claim presents "special factors counselling hesitation." *Abbasi*, 582 U.S. at 136 (quotation marks omitted) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The focus of the special-factors inquiry is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* As a result, separation-of-powers principles "should be central to the analysis." *Id.* at 135. Multiple special factors preclude implying a damages remedy here.

**1. Alternative remedial structures foreclose a *Bivens* remedy.**

The Supreme Court in *Egbert* held that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). And that is true even if the remedial structure does not provide complete relief. *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). Indeed, that is true even if the

remedial structure provides *no relief at all* to a particular plaintiff. *See Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988). This is because "*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers.'" *Egbert*, 596 U.S. at 498. Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* If the remedial process is established by Congress or the Executive to deter misconduct, the *adequacy* of such deterrence is not for the courts to decide. *Id.* Here, there are several such remedial structures in place that help deter officer misconduct and preclude creation of a *Bivens* remedy in this new context.

First, the existence of an agency's own grievance procedures and regulatory obligations to investigate complaints of officer misconduct constitute such a remedial structure. *Egbert*, 596 U.S. at 497. As the Court held in *Egbert*, these administrative processes and remedies are adequate to bar a *Bivens* remedy even if a plaintiff "is not entitled to participate and has no right to judicial review of an adverse determination." *Id.*; *see Logsdon*, 91 F.4th at 1359; *Cain*, 2023 WL 6439438, at *4.[2]

[2] Civil-service regulations broadly require compliance with standards of ethical conduct and provide that "[a]n employee's violation of those regulations may cause the employee's agency to take disciplinary action, or corrective action," which "may be in addition to any penalty prescribed by law." 5 C.F.R. § 735.103. These regulations apply fully to Department of Justice employees, including FBI officers. 28 C.F.R. § 45.1.

An excessive-force aggrieved party may file a complaint with the Department of Justice's Office of Inspector General (OIG). The FBI is a bureau within the Department of Justice. 28 U.S.C. § 531. The Department's OIG is authorized to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice." 5 U.S.C. § 413(b)(2); *see* 28 C.F.R. § 0.29c(d). Any person can report misconduct "related to" the FBI by submitting an online complaint form to the OIG. OIG, U.S. Dep't of Just., *Submitting a Complaint*, https://perma.cc/J6U5-UVBJ. "OIG investigations sometimes lead to criminal prosecution or civil or administrative action." *Logsdon*, 91 F.4th at 1360 (quotation marks omitted). Even if OIG declines to investigate a complaint, it must refer any "non-frivolous allegations of serious misconduct" to DOJ's or FBI's Office of Professional Responsibility. 5 U.S.C. § 413(b)(2)-(3); *see also* 28 C.F.R. § 0.29c(d). And aggrieved individuals may also lodge complaints in a variety of ways with any one of the FBI's local field offices. *See* FBI, *Contact Us: Field Offices*, https://www.fbi.gov/contact-us/field-offices.

The threat of a criminal, misconduct, or other investigation and potential discipline for misbehavior is a "safeguard[]" that secures "an adequate level of deterrence" and prevents "constitutional violations 'from recurring.'" *Egbert*, 596 U.S. at 498; *Hudson v. Michigan*, 547 U.S. 586, 599 (2006) ("[I]t is not credible to assert that internal discipline, which can limit successful careers, will not have a deterrent effect.").

Plaintiff utilized these administrative processes and appended the agency's responses to his complaint. *See* Complaint Attachments 11 & 12, *Salaman v. Carney*, No. 3:25-cv-482 (D. Conn. Mar. 24, 2025), Dkt. No. 1. Courts have "no warrant to doubt that the consideration" of such grievances "afforded [plaintiff] an alternative remedy." *Egbert*, 596 U.S. at 498.

In addition, Congress has established damages remedies under some circumstances. By statute, the Department of Justice "may settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under [the FTCA]." 31 U.S.C. § 3724; *see also Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (per curiam) (describing this statutory remedy as an "alternative means" for the plaintiff to "seek compensation"); *United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010) (noting that § 3724 would be an obstacle to the criminal defendant's hypothetical *Bivens* action).

Finally, as the district court noted, in the FTCA, Congress provided for a damages remedy for torts committed by federal law enforcement officers. A89; *see* 28 U.S.C. § 1346(b)(1); *id.* § 2680(h); A88-89; *see also Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (FTCA is an "alternative remedial scheme" even if it "might not give [the plaintiff] everything he seeks."); *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir.

2019) (unpublished opinion) (considering that the plaintiff "could have sought a remedy under the [FTCA]"); *see also Edwards v. Gizzi*, 107 F.4th 81, 85 & n.3 (2d Cir. 2024) (Park, J., concurring in the judgment). *But see Snowden v. Henning*, 72 F.4th 237, 246 n.4 (7th Cir. 2023) (suggesting that FTCA would not preclude recognition of a *Bivens* remedy in a new context).

The Court need not decide whether any of these remedial schemes alone is sufficient to satisfy the special-factors inquiry, but taken together, it is clear that plaintiff's novel claim cannot proceed.

**2. Permitting a *Bivens* remedy against FBI agents assisting Task Force operations may interfere with the federal relationship with state and local law enforcement and adversely affect public safety.**

An additional reason not to extend *Bivens* to an action against the FBI officers involved in federal task force operations enforcing a warrant is that the judicial creation of such a damages remedy could interfere with the relationship between federal, state, and local law-enforcement agencies. *See Egbert*, 596 U.S. at 493 ("Even in a particular case, a court likely cannot predict the "systemwide" consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief."). Plaintiff incorrectly suggests otherwise. *See* Opening Br. 43-44 (arguing that there would be no systemwide consequences from an expansion of *Bivens* liability).

The FBI has long-standing task force operations and partnerships with federal, state, and local agencies to augment its mission. *See generally*, FBI, *Different Task Forces, One Mission*, https://www.fbi.gov/image-repository/infographic-different-task-forces-one-mission-102425.jpg/view. This cooperation enables FBI task forces to "expands cooperation and communication among federal, state, and local law enforcement agencies, increasing productivity and avoiding duplication of investigative efforts." *See* FBI, *What We Investigate: Violent Gang Task Forces*, *supra*.

As noted, four courts of appeals have concluded that allowing *Bivens* claims against federal task forces under the supervision of the U.S. Marshal Service would "[c]hill[] participation in joint task forces," *Logsdon*, 91 F.4th at 1358, and "negatively affect" their work, *Cain*, 2023 WL 6439438, at *4; *see also Orellana*, 145 F.4th at 524. For this reason, the Tenth Circuit was "confident that the Supreme Court would hold 'that the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action in [this] context,' where the impact of potential liability on cooperation among law-enforcement agencies needs to be assessed." *Logsdon*, 91 F.4th at 1359 (alteration in original) (citation omitted) (quoting *Egbert*, 596 U.S. at 495).

The FBI task forces, like the U.S. Marshal Service, inherently require a large degree of cooperation between independent sovereigns. *See Orellana*, 145 F.4th at 524. Extending a *Bivens* remedy to include officers assisting task force operations would risk undermining the unique cooperation necessary to fulfill their mission. Allowing a

suit to proceed against federal officers such as the FBI SWAT team supporting task force operations in executing a warrant would pose risks to the mission of the task force and its ability to cooperate with state and local partners.

### D. Plaintiff offers no basis for disturbing the district court's judgment.

1. Plaintiff's principal contention is that the district court erred by considering the availability of FTCA as a basis for holding that plaintiff's claim presents a new context from *Bivens*. *See* Opening Br. 21-30. Plaintiff argues that adopting such an argument would "in effect, do what the Supreme Court has not done and overrule *Bivens*." Opening Br. 29. As explained *supra* pp.10-21, plaintiff's claims fail under the Court's two-step *Abbasi-Egbert* framework, regardless of whether the FTCA is considered a new-context factor at step one or a special factor at step two. It is therefore unnecessary to address at which step the availability of the FTCA is best considered, given that plaintiff cannot prevail under either approach.

Plaintiff also objects to the district court's reliance on the FTCA as an alternative remedial scheme that precludes an extension of *Bivens* liability to a new context. Plaintiff observes (at 32-34) that *Carlson* stated that Congress has treated the FTCA and *Bivens* "as parallel, complementary causes of action." 446 U.S. at 19-20. But that establishes only that Congress did not displace a damages remedy in the contexts where one was recognized in *Bivens*, *Davis*, and *Carlson*. *See Hernandez*, 589 U.S. at 111 n.9 (In enacting the FTCA, Congress "left *Bivens* where it found it.").

Congress's willingness to accept particular judicially created remedies does not suggest that the potential availability of an FTCA action should not cause this Court to pause before devising a new damages remedy for a different context. *See also Edwards*, 107 F.4th at 86 & n.5 (Park, J., concurring in judgment) ("Courts of Appeals have held that the availability of relief under the FTCA is a special factor . . . ." (collecting cases)). The same is true of the fact that other courts have held that the FTCA did not displace *Bivens* in its existing context, *see* Opening Br. 35-37 (citing cases).

If the public interest supports holding federal agents assisting a task force in executing a warrant personally liable for their work, then the decisions whether to recognize that remedy and on what terms must be made by Congress.

2. Indeed, it is plaintiff that has the *Abbasi* analysis backward. Plaintiff suggests broadly (at 13) that this case involves "the same constitutional right, violated in the same way and in the same setting, by the same category of defendants carrying out the same law enforcement mandate," but his characterization is far too general. In an effort to analogize the actions challenged in this case and in *Bivens*, plaintiff describes them in the most general terms: a Fourth Amendment excessive force claim against line-level enforcement officers. Opening Br. 17-18. This characterization cannot be squared with *Egbert*.

After *Egbert*, courts must look carefully at whether claims arise in a new context. While some claims may arise in existing contexts, *see* Opening Br. 20-22, courts of appeals have found meaningful differences in cases raising Fourth

Amendment claims for unreasonable searches and excessive force. *See Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) ("Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly."); *see also Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (emphasizing "if 'there is any reason to think that Congress might be better equipped to create a damages remedy' for a constitutional violation, we must refrain from recognizing one" (emphasis omitted) (quoting *Egbert* 596 U.S. at 492)). Plaintiff's general description of the existing *Bivens* context entirely ignores at least two meaningful differences, *see supra* pp. 10-15: that the officers acted pursuant to a warrant and that they acted in coordination with a federal task force.

Plaintiff's analysis of the special-factors inquiry is similarly misguided. *See* Opening Br. 43-44. First, plaintiff suggests, contrary to the Supreme Court's instruction, *see Egbert*, 596 U.S. at 497-98, that the administrative mechanisms provided for deterring misconduct in these circumstances, such as an internal misconduct investigation or OIG process, are not special factors that would foreclose a novel damages remedy. Plaintiff further contends that the length of the investigation or the outcome was relevant to the special factors analysis. Opening Br. 42-43. The Supreme Court has made clear that the existence of "any alternative, existing process for protecting the injured party's interest" can counsel hesitation, *Abbasi*, 582 U.S. at 137 (alteration omitted) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), even when the alternatives may not enable the particular plaintiff to obtain money damages or similarly effective relief. *See, e.g.*, *Bush*, 462 U.S. at 372

(declining to create a *Bivens* remedy even though alternative processes "were not as effective as an individual damages remedy and did not fully compensate [the plaintiff] for the harm he suffered" (footnote omitted)); *Goldey v. Fields*, 606 U.S. 942 (2025) (per curiam) (summarily reversing a Fourth Circuit decision permitting a *Bivens* suit to proceed where an inmate alleged prison officials had thwarted access to the administrative remedy scheme). The Supreme Court's instruction regarding the significance of such a remedy's existence, rather than its practical availability or efficacy in a particular circumstance, control.

Second, plaintiff's contention that a *Bivens* remedy must lie where there are no foreign security, national security, military or other sensitive functions is wrong. *See* Opening Br. 43-44. That logic inverts the special-factors analysis. That inquiry requires a court to examine whether the separation-of-powers factors at play in *Bivens* apply in the same way to the context in this case or, instead, whether the relevant policy concerns are sufficiently different that Congress might strike a different balance. While it is true that a search or arrest at the border presents different concerns than a warrantless arrest in a suspect's home, it does not follow that an arrest in a suspect's home presents the same separation-of-powers concerns as a search and arrest pursuant to warrants.[3]

[3] To the extent that plaintiff challenges the district court's decision not to grant him leave to amend his complaint, *see* Opening Br. 10 n.6, any such challenge is meritless. Plaintiff's opening brief makes no showing of how amendment could resuscitate his *Bivens* claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DAVID X. SULLIVAN
*United States Attorney*

MELISSA N. PATTERSON

*s/ Jaynie Lilley*
JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7321*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3542*
*jaynie.lilley2@usdoj.gov*

July 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,100 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jaynie Lilley*
Jaynie Lilley